United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN KNEPPER,<br><br>    Plaintiff,<br><br>    v.<br><br>OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., et al.,<br><br>    Defendants. | Case No. 18-cv-00303-WHO<br>Case No. 18-cv-00304-WHO<br><br>**ORDER GRANTING MOTIONS TO TRANSFER** |

Plaintiff Dawn Knepper was a non-equity shareholder of defendant Ogletree, Deakins, Nash, Smoak & Stewart, P.C. (Ogletree), specializing in employment law, when she received three notices that she would be bound by the firm's Arbitration Agreement if she did not opt out of it by March 1, 2016. She did not opt out. For that reason, as discussed below, Ogletree's motions to transfer these cases to the Central District of California, where arbitration can be compelled pursuant to the Agreement, is GRANTED. The question of whether plaintiff should be allowed to amend her FAC in Case No. 18-cv-00303 is deferred for resolution by the transferee court.

**BACKGROUND**

**I. PROCEDURAL BACKGROUND**

In Case No. 18-cv-00303, under the operative First Amended Complaint (FAC), Knepper seeks to represent a class of current and former non-equity shareholders of defendant Ogletree. She claims that Ogletree engaged in systematic gender discrimination and asserts claims for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), violation of the Equal Pay Act of 1963, 29 U.S.C. §§ 206 et seq. ("EPA"), and violation of related California statutes. First Amended Complaint in Case No. 18-cv-00303 (Dkt. No. 33) ¶ 4.

On the same day that Knepper filed her class and collective action, she also filed a

declaratory relief action. *See* Case No. 18-cv-00304. In that case, she seeks a declaration that she is not bound by any agreement to arbitrate with respect to the claims asserted in Case No. 18-00303, that she did not waive her right to bring a class or collective action, and that she did not delegate to an arbitrator the issue of arbitrability. In the alternative, if an agreement was formed, Knepper seeks a declaratory judgment that any provisions purporting to waive her right to bring a class or collective action or delegate issues of arbitrability to an arbitrator are unenforceable. Case. No. 18-cv-00304, Complaint ¶ 4.

Ogletree moved to transfer venue in both cases to the Central District of California. It argued that Knepper was covered by an Arbitration Agreement that is dispositive of the motions to transfer and mandates transfer to the Central District. It also pointed out that, on the facts alleged by Knepper as well as facts it provided, transfer was appropriate because Knepper was a non-equity shareholder in Ogletree's Orange County office and the majority of defense witnesses were based in the Central District.

Knepper opposed the motions to transfer. She argued that she was not bound by and did not agree to an Arbitration Agreement. Given the nationwide scope of her allegations on behalf of non-equity shareholders across the country and Ogletree's alleged policy of discrimination as applied to those disperse non-equity shareholders, she asserted that venue was as proper in the Northern District (where Ogletree did substantial business) as it was in the Central District (where Knepper last worked and where many of the complained-of decisions as to Knepper were made).

At the hearing on the motions to transfer venue, I explained my tentative view that regardless of whether a binding Arbitration Agreement existed between Knepper and Ogletree that required disputes to be arbitrated in the Central District, transfer appeared appropriate given that the vast majority of operative facts in Knepper's First Amended Complaint – namely the decisions regarding Knepper's compensation and the terms of her non-equity shareholder arrangement, as well as claims regarding a hostile environment directed towards Knepper specifically – were made and taken in the Central District. However, during the hearing, Knepper's counsel asked to file a Second Amended Complaint ("proposed SAC") in Case No. 18-00303, arguing that the amendment would strengthen her position that venue was appropriate in the Northern District. I

2

deferred ruling and allowed Knepper to file a motion seeking leave to file the proposed SAC. She promptly filed that motion, attaching her proposed SAC. Dkt. No. 52. The proposed SAC would add as named plaintiffs additional current and former non-equity shareholders (based outside of California), additional defendants (based within and outside of California), and one equity shareholder (also based outside of California) as a named plaintiff. *See* Dkt. No. 52-1.[1] Ogletree opposed leave to amend, arguing that amendment was futile because: (i) Knepper's claims were subject to mandatory arbitration in the Central District, (ii) the claims of the proposed additional non-California non-equity shareholders were irrelevant to venue (as those claims were likely subject to arbitration in venues outside of California), and (iii) the proposed named equity shareholder plaintiff's claims were likewise subject to binding arbitration. Dkt. No. 59.

At that juncture, it was clear that I could not resolve the motions to transfer (as well as the motion for leave to file the proposed SAC) without determining whether Knepper was at least facially covered by an agreement to arbitrate with Ogletree. Ogletree had avoided filing a petition to compel arbitration before me and rested instead on its motions to transfer venue. It contends that under the Arbitration Agreement and applicable caselaw, the only district that could compel arbitration to the appropriate forum (Orange County) is the Central District of California. Lacking sufficient information regarding the dissemination of the Arbitration Agreement and to give the parties the opportunity to focus on whether the Arbitration Agreement was at least facially enforceable against Knepper, I ordered Ogletree to either file a motion under FRCP 12 (b)(1) to determine the existence of the agreement or, alternatively, file supplemental briefing (allowing a further opposition from Knepper), so that the issue of whether Knepper was covered by an Arbitration Agreement would be adequately presented and considered in determining the pending motions. Dkt. No. 63. The supplemental briefing is now complete and the issues are ready for resolution.[2]

---

[1] Unless otherwise specified, the docket numbers cited are to the docket in Case No. 18-cv-00303.

[2] In support of her opposition to defendant's supplemental brief, Knepper seeks to file parts of the Supplemental Declaration of Jill Sanford under seal. Finding compelling justifications exist to seal the attorney-client privileged information, that request is GRANTED. Dkt. No. 72 in Case No. 18-cv-00303 and Dkt. No. 60 in 18-cv-00304. Ogletree seeks leave to file a one-page

3

## II. RELEVANT FACTUAL BACKGROUND

There is no dispute that on January 15, 2016 at 4:45 a.m. PST, Ogletree sent out an email to staff, including Knepper, titled "IMPORTANT – Two New Programs for 2016," that described the firm's new "Open Door Policy & Mutual Arbitration Agreement." Declaration of Gary Berger (Dkt. No. 28-1), Ex. A ("Email Notice 1"); Berger Decl. ¶¶ 4-6. Knepper opened Email Notice 1 on January 15, 2016, at 6:32 a.m. PST. *Id*. ¶ 6. Email Notice 1 explained that "the attached Mutual Arbitration Agreement provides that you and the Firm both agree to submit such matters to binding arbitration. The Mutual Arbitration Agreement builds on an arbitration program that was implemented in January 2014 that has been applicable to all Equity Shareholders since that time. The Firm is now expanding arbitration to apply to the rest of our community." Email Notice 1 at 1. The Agreement is described as a "mutual agreement, and it is a binding contract." *Id*. at 2.

The Notice went on:

> You have the right to opt out of the arbitration program if you wish. To do so, you must sign an Opt-Out form and return it to Kay Straky, the Firm's Director of Human Resources via email to Kay.Straky@ogletreedeakins.com,on or before March 1, 2016. The Opt-Out form is available under the "Resources" tab on the OD Connect homepage of the Firm's Human Resources Department. If you do not return an Opt-Out form by March 1, 2016 and remain employed by the Firm after that date, you will be deemed to have accepted the terms of the Agreement.

*Id*. The section describing the Arbitration Agreement concluded:

> ***Please sign and return a copy of the Mutual Arbitration Agreement to your Office Administrator. Signing the Agreement signifies that you understand you have the option to opt out and that if you do not opt out on or before March 1, 2016 you will be deemed to have accepted the Agreement***.

*Id*. at 3 (emphasis in original).

The attached Arbitration Agreement provided that:

> Ogletree Deakins (the "Firm") and the undersigned ("Individual") recognize that disputes may arise in the workplace setting from time to time that cannot be resolved without the assistance of an outside party. Individual and the Firm (collectively "the Parties") therefore enter into this Agreement to provide for arbitration as the forum for resolving any such disputes:

---

response, contesting some of the facts asserted in Sanford's Supplemental Declaration. That request is also GRANTED. Dkt. No. 73 in 18-cv-00303, Dkt. No. 61 in 18-cv-00304.

4

Arbitration Agreement (Dkt. No. 28-1 at ECF page 10 of 40). Pertinent here, paragraph 11 provides:

> 11. Opt Out. Individual may opt out of this Agreement by delivering a completed and signed Opt-Out Form to the Director of Human Resources on or before March 1, 2016. Opt-Out Forms and instructions on how to return them are available on the OD Connect home page of the Human Resources Department, under the "Resources" tab. Failure to deliver an executed Opt-Out Form on or before March 1, 2016, and continued employment with the Firm after that date, shall be deemed acceptance of the terms of this Agreement.

*Id.* At the end of the Arbitration Agreement, above the signature line, is the following:

> ***Special Note***: *This Agreement is an important document that affects your legal rights. You should familiarize yourself with it. By signing below, you acknowledge that you understand you have the option to opt out of this Agreement by returning an Opt Out form to the Director of Human Resources on or before March 1, 2016 and that failure to return an Opt Out form and remaining in the employment of the Firm after that date will be deemed an acceptance of this Agreement.*

*Id.* (emphasis in original).[3]

On January 27, 2016, at 4:31 p.m., Vicki Myers sent an e-mail to all Orange County non-equity shareholders, of counsel, staff attorneys, associates, and staff (including the e-mail address the Firm assigned to Dawn Knepper: Dawn.Knepper@ogletreedeakins.com). Berger Decl., Ex. D ("Email Notice 2"); Berger Decl. ¶ 7. Email Notice 2 explained:

> If you haven't already done so, please sign and return a copy of the Mutual Arbitration Agreement to me as soon as possible. Also, please print your name under your signature to ensure that HR files your document in the correct HR file.
>
> As indicated below: *Signing the Agreement signifies that you understand you have the option to opt out and that if you do not opt out on or before March 1, 2016 you will be deemed to have accepted the Agreement.*
>
> You have the right to opt out of the arbitration program if you wish. To do so, please read the instructions in the email below.

Dkt. No. 28-1 at ECF page 17 of 40 (emphasis in original). Email Notice 2 then included the full text from Email Notice 1 as well as the attached Arbitration Agreement.

---

[3] The Arbitration Agreement also provides that any arbitration be "held in or near the city in which individual is or was last employed." Dkt. No. 58-4 ("Arbitration Agreement"), ¶ 4.

On March 1, 2016, at 3:41 p.m. PST, Vicki Myers sent an e-mail to all Orange County non-equity shareholders, of counsel, staff attorneys, associates, and staff (including the e-mail address the Firm assigned to Dawn Knepper: Dawn.Knepper@ogletreedeakins.com). Berger Decl., Ex. E ("Email Notice 3"); Berger Decl. ¶ 8. Email Notice 3 explained:

> As a reminder, if you haven't already done so, today is the deadline to sign and return a copy of the Mutual Arbitration Agreement to me. Also, please print your name under your signature to ensure that HR files your document in the correct HR file.
>
> As indicated below: *Signing the Agreement signifies that you understand you have the option to opt out and that if you do not opt out on or before March 1, 2016 you will be deemed to have accepted the Agreement.*
>
> You have the right to opt out of the arbitration program if you wish. To do so, please read the instructions in the email below.

Dkt. No. 28-1 at ECF pg. 24 0f 40 (emphasis in original).

On March 1, 2016 at 3:46 p.m. PST, Knepper responded to Myers' email, saying "I will turn mine in tomorrow. Thanks." Berger Decl., Ex. F (Dkt. No. 28-1 at ECF pg. 31 of 40); Berger Decl. ¶ 9. There is no dispute that Knepper did not turn in either a signed Arbitration Agreement or an opt out form.

In her declaration, Knepper states that she does not "recall receiving, viewing, or opening any email from anyone at Ogletree that contained an arbitration agreement that would cover disputes between the Firm and me," she does not "recall receiving, viewing, or opening any email from anyone at Ogletree that discussed opting-out of an arbitration agreement that would cover disputes between the Firm and me," and she "does not recall reviewing any arbitration agreement that would cover disputes between the Firm and me, and I did not consider entering into any arbitration agreement that would cover such disputes. I did not knowingly enter into any arbitration agreement that would cover disputes between the Firm and me. Had I been aware that I needed to opt-out of the agreement, I would have done so." Knepper Decl. (Dkt. No. 70-6) ¶¶ 2-4. Knepper does not recall sending and cannot recall what she meant or what the context was for her March 1, 2016 response to Myers that "I will turn mine in tomorrow. Thanks." Knepper Decl. ¶ 6. She declares that given the attention demanded by her clients, other work, and family

obligations, it was not uncommon for her to "overlook administrative emails." *Id*. ¶ 7. She has no knowledge of whether the Arbitration program was discussed at Ogletree's October 2015 attorney retreat (which she did not attend) or at the January 2016 annual shareholder meeting (which she did attend). *Id*. ¶ 8.

## DISCUSSION

### I. KNEPPER IS FACIALLY COVERED BY THE ARBITRATION AGREEMENT

#### A. Authority to Decide Whether an Agreement to Arbitrate Exists

Initially, Ogletree argues that any question as to the "enforceability" of the Arbitration Agreement must be decided by an arbitrator because the Arbitration Agreement unambiguously commits disputes regarding the "interpretation, applicability, enforceability, or formation of this Agreement, including without limitation any claim that the Agreement is void or voidable," to the Arbitrator. Ogletree Supp. Brief (Dkt. No. 66) at 5-6. That may be, but the issue of *whether* Knepper is covered by the Arbitration Agreement or was excused from failing to opt out are issues to be decided by a court. *See, e.g., Cox v. Ocean View Hotel Corp*., 533 F.3d 1114, 1120 (9th Cir. 2008) (noting "particular contractual defenses to enforcement of the arbitration clause . . . were properly heard by the district court"); *Covillo v. Specialty's Cafe*, C-11-00594 DMR, 2012 WL 3537058, at *6 (N.D. Cal. Aug. 14, 2012) ("the court must determine as a threshold matter whether a valid agreement to arbitrate exists").

Ogletree's authority is not to the contrary. *See, e.g., Mohamed v. Uber Techs., Inc*., 848 F.3d 1201, 1206 (9th Cir. 2016) (noting that arguments as to enforceability of any arbitration provision was within province of arbitrator where plaintiff "accepted the agreements and did not opt out."); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (noting there has to be a "clear and unmistakable" agreement to confer on the arbitrator the question of arbitrability before a court is precluded from deciding that issue). The issue of whether Knepper agreed to arbitration when she did not sign the Agreement and failed to opt out, but then continued to work at Ogletree are contract formation issues that must be decided by a court in the first instance.

#### B. Knepper's Consent and Knowledge

Under the Federal Arbitration Act, a party may challenge the validity or applicability of an

7

arbitration provision by "raising the same defenses available to a party seeking to avoid the enforcement of any contract." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1121 (9th Cir. 2008) (internal citations omitted). These "contract-based challenges are governed by applicable state law." *Id.*

Knepper argues that she cannot be considered to have agreed to the Arbitration Agreement because she was unaware Ogletree sent her the Arbitration Agreement by email prior to July 2017 and therefore her knowing assent is lacking. However, Ogletree's records show that Knepper opened Email Notice 1 and *responded* to Email Notice 3. That Knepper – an experienced employment law attorney – may not have read or fully comprehended the contents of those emails and their attachments does not preclude a determination that she is bound by the Arbitration Agreement. *See, e.g., Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185, 1198 (N.D. Cal. 2015), *aff'd in part, rev'd in part and remanded*, 836 F.3d 1102 (9th Cir. 2016), and *aff'd in part, rev'd in part and remanded*, 848 F.3d 1201 (9th Cir. 2016) ("it is essentially irrelevant whether a party actually reads the contract or not, so long as the individual had a legitimate opportunity to review it."); *Cir. City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002) (rejecting argument that arbitration agreement was procedurally unconscionable when plaintiff asserted he "did not have the degree of sophistication necessary to recognize the meaning of the opt-out provision or to know how to avoid it."); *see also Brookwood v. Bank of Am.*, 45 Cal. App. 4th 1667, 1673 (Cal. App. 6th Dist. 1996) (rejecting argument that plaintiff could "rescind a contract simply by proving her unilateral ignorance of the contractual terms" where plaintiff argued she was unaware that security registration agreement contained arbitration provision).[4]

Knepper also argues that because she did not sign the Arbitration Agreement, or otherwise

---

[4] That Knepper did not read or fully understand the Email Notices and Arbitration Agreement does not make her agreement to it – through her failure to opt out – unknowing under Title VII. The "knowing" agreement cases under Title VII relied on by Knepper address the inapposite circumstance where an employee signs an "acknowledgment" form affirming receipt of a handbook and an employee's duty to become familiar with the handbook's contents without disclosing that the handbook contains an arbitration provision. *See, e.g., Ashbey v. Archstone Prop. Mgt., Inc.*, 785 F.3d 1320, 1325 (9th Cir. 2015). Here, the Arbitration Agreement was presented directly to Knepper, described in detail in Email Notice 1, and attached in full to all three Email Notices.

8

manifest express consent to it, she cannot be bound by it. However, numerous courts (including from this District) have concluded that employees can be bound by agreements to arbitrate where, like the Notices and Agreement here, the relevant employer documents and communications disclose that an employee's failure to opt out manifests assent to an "implied-in-fact" arbitration agreement. For example, in *Hicks v. Macy's Dept. Stores, Inc*., C 06-02345 CRB, 2006 WL 2595941 (N.D. Cal. Sept. 11, 2006) the company twice mailed a packet of information to plaintiff explaining the company's multi-step dispute resolution program. "Step 4" was mandatory arbitration "if the employee agreed to be bound by arbitration." *Id*. at *1. Both times the employee was also mailed an "election" form to opt out of the Step 4 arbitration and advised he would be bound unless he opted out. *Id*. Plaintiff did not return the opt out form either time. *Id*. The court concluded that on those facts "plaintiff impliedly agreed to arbitrate his employment-related claims. Plaintiff's assertion that he did not intend to enter into an arbitration agreement with Macy's is incredible in light of plaintiff's failure to explain why he did not return the opt out form." *Id*. at *2; *see also Castro v. Macy's, Inc.*, C 16-5991 CRB, 2017 WL 344978, at *3 (N.D. Cal. Jan. 24, 2017) (no affirmative agreement needed, agreement implied where employee failed to opt out); *Aquino v. Toyota Motor Sales USA, Inc.,* 15-CV-05281-JST, 2016 WL 3055897, at *4 (N.D. Cal. May 31, 2016) ("it is undisputed that Ms. Aquino received the Agreement (at least via email), that she failed to opt out of it, and that she continued to work at Toyota after the Agreement went into effect. . . . Moreover, Ms. Aquino does not argue that she ever attempted to communicate her lack of consent to the Agreement to Toyota in any way. Under California law, these facts establish an enforceable agreement between Ms. Aquino and Toyota."); *see also Davis v. Nordstrom, Inc*., 755 F.3d 1089, 1093 (9th Cir. 2014) (where the original arbitration program was described in employee handbook and subsequently notice was provided to employees of a new provision (barring class or collective claims), the court recognized that "[w]here an employee continues in his or her employment after being given notice of the changed terms or conditions, he or she has accepted those new terms or conditions.").[5]

---

[5] In *Castro*, the fact that the plaintiff "unequivocally denies receiving the arbitration agreement and Opt Out Form in the mail" was insufficient to show lack of an agreement, where the company

Knepper attempts to distinguish the facts of the *Hicks* and *Castro* cases from this one, emphasizing that in those cases the record reflected that the employers took steps to inform employees about the arbitration agreement and opt out option that were not taken by Ogletree here. *See, e.g., Hicks,* 2006 WL 2595941 at *1 (noting that defendant held daily meetings for its employees about the new dispute resolution policy, provided brochures explaining the policy, and posted signs regarding the policy in employee common areas). What constitutes sufficient notice in the consumer context or in the more typical employer-employee context is not particularly persuasive in this context, where a law firm specializing in employment law notifies non-equity shareholders that it is extending an arbitration program to cover them. While Knepper's experience as an employment law attorney may not be dispositive, it is significant and weighs in favor of concluding that she is facially covered by the Arbitration Agreement.[6] Knepper's attempt to analogize Ogletree's actions to situations where defendants attempt to impose arbitration on unsophisticated workers or on consumers is not well-taken.

Close to the facts here, in *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1106 (9th Cir. 2002), the company instituted a dispute resolution program (DRA) that was distributed to employees in a packet with other materials, including an opt out form. The employees had to acknowledge receipt of the packet but were not required to affirmatively agree to be bound by the DRA. The acknowledgement form clearly explained the right to and consequence of failing to opt

---

had evidence that the information packets and opt out forms were at least mailed to plaintiff (and plaintiff did not dispute having received other mail at that address). *Castro*, 2017 WL 344978 at *3. The evidence here is similar, although delivered and in one case responded to electronically. *See also Craig v. Brown & Root, Inc*., 84 Cal. App. 4th 416, 421 (Cal. App. 2d Dist. 2000) (despite declaration from plaintiff that she did not receive mailed copy of arbitration agreement, court of appeal affirmed trial court's enforcement of arbitration agreement as defendant's "declarations and documents (mailing lists) are circumstantial evidence from which the court was entitled to infer that Craig had received the memorandum and brochure.").

[6] The repeated explanations of the consequences of failing to opt out, the explicit disclosure that absent opt out continued employment will be deemed acceptance, as well as the consistent limitation of the "signature" language to acknowledgment of the opportunity to opt out, distinguish this case from *Gorlach v. Sports Club Co*., 209 Cal.App.4th 1497 (2012). There, where the employees were presented with a new employee handbook that contained a provision stating that as a "condition of employment" all employees "must sign" an arbitration agreement and plaintiff employee declined to sign the agreement and continued working, the court concluded that plaintiff's continued employment did not create an implied-in-fact agreement. *Id*. at 1507-10.

out. In those circumstances the Ninth Circuit held that "inaction is indistinguishable from overt acceptance," and the court "may conclude that the parties have come to agreement," and "infer that Najd assented to the DRA by failing to exercise his right to opt out of the program." *Id*. at 1109.

Here, although Knepper did not sign the Agreement to acknowledge her understanding of her right to opt out and did not submit the opt out form, she did – at least once – affirmatively acknowledge receipt of notice about both the arbitration program and the right to opt out when she responded on March 1, 2016 to Email Notice 3. She says that she cannot currently recall her understanding of or knowledge of what she meant by that response, but that does not alter her acknowledgement of receipt of the information on that date.[7]

Finally, and relatedly, Knepper argues that even if she could theoretically be bound to an arbitration agreement sent by email without her affirmative assent, she cannot be considered to have agreed to the Arbitration Agreement at issue. She argues that the Arbitration Agreement contains language indicating that to be bound by it, the recipient was *required* to sign it; it is undisputed that she did not.

Some of the language used by Ogletree in its Notices, as well as the internal emails sent among Ogletree's HR personnel, show that Ogletree wanted to have each covered individual sign and return the Arbitration Agreement to their HR representative. *See, e.g.*, Dkt. No. 70-1 (January 15, 2016 Email from HR director to office administrators noting that "all" employees "have been asked to return the signed Mutual Arbitration Agreement to their local Office Administrator" but

---

[7] To be clear, I am not endorsing a general "silence equals consent" position. As the Ninth Circuit itself recognized, "[i]n other circumstances acceptance by silence may be troubling, and explicit consent indispensable." *Najd*, 294 F.3d at 1109. Here, however, there was not complete silence. Knepper affirmatively acknowledged receipt on March 1, 2016. *See Hicks*, 2006 WL 2595941 at *3 (concluding that the fact that "plaintiff never signed a form acknowledging receipt of the SIS materials [ ] is immaterial as plaintiff does not dispute defendant's evidence that he did in fact receive such materials; indeed, he does not even dispute that he read the materials."). Moreover, Knepper is an experienced employment law attorney, and that she acknowledged receipt of the materials at least once (in addition to Ogletree's evidence that Knepper received the information at least three times) makes a finding of implied consent appropriate. *Cf. Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 981 (Cal. App. 2d Dist. 2010) (taking into consideration, when determining procedural unconscionability, the fact that plaintiff was not a "low-wage employee without the ability to understand that he was agreeing to arbitration" but was "a highly educated attorney.").

11

recognizing that because "the policy does allow current employees to opt-out of the arbitration program so you may not receive an agreement from every employee."). However, each of the Email Notices, as well as the text above the signature line in the Arbitration Agreement, explain that the signature indicates *only* that the signer understood that the signer had the right to opt out of the arbitration program. *See* Arbitration Agreement ("***Special Note****: This Agreement is an important document that affects your legal rights. You should familiarize yourself with it. By signing below, you acknowledge that you understand you have the option to opt out of this Agreement by returning an Opt Out form to the Director of Human Resources on or before March 1, 2016 and that failure to return an Opt Out form and remaining in the employment of the Firm after that date will be deemed an acceptance of this Agreement*."); *see also* Email Notice 1 ("***Please sign and return a copy of the Mutual Arbitration Agreement to your Office Administrator. Signing the Agreement signifies that you understand you have the option to opt out and that if you do not opt out on or before March 1, 2016 you will be deemed to have accepted the Agreement***."); Email Notice 2 ("As indicated below: *Signing the Agreement signifies that you understand you have the option to opt out and that if you do not opt out on or before March 1, 2016 you will be deemed to have accepted the Agreement.*"); Email Notice 3 (same). The "signature" language applies to acknowledgment only of the right to opt out, not an acknowledgement of an agreement to be bound.[8]

---

[8] Knepper cites cases declining to enforce arbitration agreements where the employers expressly sought or required employee consent to an arbitration agreement, in effect creating a bilateral as opposed to a unilateral contract. However, the language and structure of the Arbitration Agreement is starkly different than the language and structure of bilateral agreements in those cases. *See Romo v. Y-3 Holdings, Inc*., 87 Cal.App.4th 1153, 1160 (2001) (where employees signed various provisions in their employment application, but did not sign the separate arbitration section within that application, employees "did not assent" to arbitration); *Mitri v. Arnel Management Co*., 157 Cal.App.4th 1164, 1173 (2007) (where the employee handbook contained an arbitration policy stating that employees would be required to sign a separate arbitration agreement, and none of the affected employees signed the separate agreement, there was no consent or effective agreement to arbitrate); *Recinos v. SBM Site Services LLC*, A151253, 2018 WL 3801844, at *5 (Cal. App. 1st Dist. Aug. 10, 2018) (where arbitration provision was separately set forth in the job application with its own signature line, applicants did not sign the arbitration provision, and there was no disclosure that arbitration was a term and condition of employment, there was no agreement to arbitrate); *Stagner v. Luxottica Retail N.A., Inc*., C 11-02889 CW, 2011 WL 3667502, at *5 (N.D. Cal. Aug. 22, 2011) (rejecting motion to compel arbitration where employee signed her agreement to terms and conditions of employment in employee handbook but did not sign separate section expressly agreeing to be bound by dispute

Moreover, the language of Email Notices as well as the Arbitration Agreement itself clearly explain that failure to opt out plus continued employment will be "deemed" agreement to the Arbitration Agreement. *See* Email Notice 1 ("If you do not return an Opt-Out form by March 1, 2016 and remain employed by the Firm after that date, you will be deemed to have accepted the terms of the Agreement."); Email Notice 2 ("if you do not opt out on or before March 1, 2016 you will be deemed to have accepted the Agreement"); Email Notice 3 (same). In these circumstances, Knepper's failure to sign the Agreement is not dispositive. It is her failure to opt out – the need for which and consequences of were *clearly explained* to her in multiple emails received by Knepper – and her continued employment which facially binds Knepper to the Arbitration Agreement.

### C. Unconscionability

Knepper argues that even if the Agreement applies to her, I should nonetheless deny the motions to transfer venue because the Agreement is both procedurally and substantively unconscionable and therefore unenforceable. However, the Agreement contains a delegation clause providing that:

> Except as provided below, the arbitrator shall have the authority to resolved any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including without limitation any claim that the Agreement is void or voidable.

Agreement at ¶ 6. The "except as" language carves out from the arbitrator's powers only the ability to consolidate claims of other individuals into a single proceeding. *Id*. Under this clause, disputes over the unconscionability of the Agreement – procedurally and substantively – are to be decided by the arbitrator. *See Mohamed v. Uber Techs., Inc*., 848 F.3d 1201, 1209 (9th Cir. 2016).

Knepper argues that the delegation clause does not preclude me from determining unconscionability because there are serious doubts whether the Agreement applies to her and the language in the delegation clause is confusing and contradictory. Both of those arguments are meritless. I have already determined above that the Agreement facially applies to her. Despite her protestations, the language of the delegation clause clearly conveys to the arbitrator the general

---

resolution agreement).

question of the Agreement's enforceability as well as the narrower question of whether her claims (individual or collective) are subject to arbitration.

In *Mohamed*, because the plaintiffs raised arguments concerning why the delegation clause itself was procedurally or substantively unconscionable, the court resolved those challenges. *Mohamed v. Uber Techs., Inc*., 848 F.3d at 1210-1212 (addressing unconscionability narrowly as to delegation clause only). Here, Knepper's arguments for procedural unconscionability are the unfairness, ambiguity, and surprise arguments to the existence of the Agreement that I addressed and rejected above. Her substantive unconscionability arguments are based on "one-sided" provisions in the Agreement itself, not the delegation provision. Those questions are to be resolved by the arbitrator.

The delegation provision is clear and not unconscionable. Knepper's arguments challenging the Agreement must be resolved by the arbitrator.

For the foregoing reasons, I conclude that Ogletree has demonstrated that the Arbitration Agreement facially applies to Knepper.

## II. MOTION TO TRANSFER

In moving to transfer these cases to the Central District of California, Ogletree argued that the existence of the Arbitration Agreement – requiring arbitration of Knepper's claims in the Central District – was dispositive and requires granting its motions to transfer. *See, e.g., Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 64 (2013) ("forum-selection clauses should control except in unusual cases."). In the extensive briefing to date in this case, Knepper does not argue or explain why this case should not be transferred to the Central District if she *is* at least facially bound by the Arbitration Agreement.

Given the showing that Knepper is at least facially bound to the Arbitration Agreement by her failure to opt out, the forum selection clause in that Agreement mandates that these cases be transferred to the Central District. *See* Arbitration Agreement ¶ 4 ("[t]he arbitration hearing shall be held in or near the city in which individual is or was last employed by the Firm."). The motions to transfer these two cases are GRANTED. The motion for leave to file an amended complaint in Case No. 18-00303 is deferred for resolution by the judge in the transferee district.

**CONCLUSION**

Defendant's motions to transfer Case Nos. 18-cv-00303 and 18-cv-00304 are GRANTED. These cases are transferred to the Central District of California.

**IT IS SO ORDERED.**

Dated: January 9, 2019


William H. Orrick
United States District Judge