NANCY L. ABELL (SB# 88785)
nancyabell@paulhastings.com
DEBORAH S. WEISER (SB# 167132)
deborahweiser@paulhastings.com
VALERIE M. MAREK (SB# 301540)
valeriemarek@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California  90071-2228
Telephone:  (213) 683-6000
Facsimile:  1(213) 627-0705

PAUL W. CANE, JR. (SB# 100458)
paulcane@paulhastings.com
PAUL HASTINGS LLP
101 California Street
Forty-Eighth Floor
San Francisco, California  94111
Telephone:  (415) 856-7000
Facsimile:   (415) 856-7100

Attorneys for Defendant
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.,
CHARLES MATTHEW KEEN
and KIM FRANKLIN EBERT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN KNEPPER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., CHARLES MATTHEW KEEN & KIM FRANKLIN EBERT,<br><br>Defendants. | Case No. 8:19-cv-00060-JVS-ADS<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO COMPEL INDIVIDUAL ARBITRATION AND MOTION TO STAY ALL PROCEEDINGS**<br><br>Date:          February 25, 2019<br>Time:          1:30 p.m.<br>Courtroom:   10C<br>Judge:         Hon. James V. Selna<br><br>Complaint Filed:   January 12, 2018<br>Trial Date:          Not yet set |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ............................... 2

    A.   In 2016, Ogletree Created An Opt-Out Arbitration Program For All Non-Equity Shareholders And Other Personnel. ............................... 2

    B.   After Receiving Notice Of The Arbitration Program, Knepper Was Reminded—Twice—Of The Opt-Out Opportunity, But She Chose Not To Opt Out. ........................................................................... 5

    C.   Knepper Has Refused To Arbitrate. ............................................... 7

    D.   Judge Orrick Found There Was an Agreement to Arbitrate and Granted Ogletree's Motion To Transfer To This Court. ................... 8

III.  AFTER RESOLVING THE GATEWAY ISSUES RESERVED FOR A COURT, THIS COURT SHOULD COMPEL INDIVIDUAL ARBITRATION. ........................................................................... 8

    A.   The Federal Arbitration Act Requires Enforcement Of Arbitration Agreements According To Their Terms. ......................................... 9

    B.   This Court Should Resolve In Ogletree's Favor The Two Gateway Questions Properly Before The Court. ........................................... 10

        1.   The Agreement covers the claims here asserted. ................... 10

        2.   The class/collective-action waiver is enforceable. ............... 10

    C.   This Court Should Compel Knepper To Individual Arbitration. ................... 13

        1.   Judge Orrick correctly found that Knepper received—and knew she had received—an arbitration agreement. ..................... 14

        2.   Judge Orrick correctly held that an arbitration agreement was formed without a signed acknowledgment of receipt. ............ 16

    D.   The Agreement Lawfully Delegated To The Arbitrator Knepper's Unconscionability Claim. ........................................................... 18

        1.   Parties to an arbitration agreement lawfully may delegate to the arbitrator even gateway questions of arbitrability. ............... 18

        2.   Knepper's Agreement similarly delegated to the arbitrator most enforceability issues, including any question of unconscionability. ..................................................... 19

DEFENDANTS' PETITION TO COMPEL IND. ARBITRATION AND MOTION TO STAY ALL PROCEEDINGS

# TABLE OF CONTENTS
(continued)

**Page**

IV.   THE COURT SHOULD DENY WITHOUT PREJUDICE THE PENDING MOTION FOR LEAVE TO AMEND AND STAY THE PAGA REPRESENTATIVE CLAIM AND ALL OTHER PROCEEDINGS PENDING THE OUTCOME OF ARBITRATION....................................................20

    A.   The PAGA Representative Claim Should Be Stayed Pending The Arbitration. ..........................................................................................20

    B.   The Court Should Deny The Pending Motion For Leave To Amend And Stay All Other Proceedings Pending The Arbitration..........................21

V.   CONCLUSION....................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allied-Bruce Terminix Cos., Inc. v. Dobson,*
  513 U.S. 265 (1995).............................................................................................9

*Alvarez v. AutoZone, Inc.,*
  No. EDCV 14–02471–VAP (SPx), 2015 WL 13427751
  (C.D. Cal. July 8, 2015)....................................................................................21

*Aquino v. Toyota Motor Sales USA, Inc.,*
  No. 15-cv-05281-JST, 2016 WL 3055897 (N.D. Cal. May 31, 2016).........15

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011)..............................................................................9, 11, 12

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
  475 U.S. 643 (1986)..........................................................................................19

*Bolter v. Superior Court,*
  87 Cal. App. 4th 900 (2001) ...........................................................................13

*Brennan v. Opus Bank,*
  796 F.3d 1125 (9th Cir. 2015) ........................................................................19

*Brookwood v. Bank of Am.,*
  45 Cal. App. 4th 1667 (1996) .........................................................................14

*Castle v. Wells Fargo Fin., Inc.,*
  No. C 06-4347 SI, 2007 WL 703609 (N.D. Cal. Mar. 5, 2007)...................22

*Castro v. Macy's, Inc.,*
  No. C 16-5991 CRB, 2017 WL 344978 (N.D. Cal. Jan. 24, 2017).........14-15

*Catamaran Corp. v. Towncrest Pharmacy,*
  864 F.3d 966 (8th Cir. 2017) ..........................................................................11

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC,*
  809 F.3d 746 (3d Cir. 2016) ............................................................................11

*Circuit City Stores, Inc. v. Adams,*
  532 U.S. 105 (2001)............................................................................................9

DEFENDANTS' PETITION TO
COMPEL IND. ARBITRATION AND MOTION TO
STAY ALL PROCEEDINGS

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Circuit City Stores, Inc. v. Ahmed,*
  283 F.3d 1198 (9th Cir. 2002) ............................................................. 14, 15

*Circuit City Stores, Inc. v. Najd,*
  294 F.3d 1104 (9th Cir. 2002) .................................................................. 15

*Cox v. Ocean View Hotel Corp.,*
  533 F.3d 1114 (9th Cir. 2008) .................................................................. 13

*Davis v. Nordstrom, Inc.,*
  755 F.3d 1089 (9th Cir. 2014) ........................................................... 9, 10, 15

*Dean Witter Reynolds, Inc. v. Byrd,*
  470 U.S. 213 (1985) ................................................................................ 9

*Denari v. Rist,*
  No. 10–cv–2704, 2011 WL 332543 (N.D. Ill. Jan. 31, 2011) ..................... 22-23

*Epic Sys. Corp. v. Lewis,*
  138 S. Ct. 1612 (2018) ............................................................................ 11

*Eshagh v. Terminix Int'l Co.,*
  588 F. App'x 703 (9th Cir. 2014) ............................................................. 11

*Farrar v. Direct Commerce, Inc.,*
  9 Cal. App. 5th 1257 (2017) .................................................................... 13

*Green v. Zachry Indus., Inc.,*
  36 F. Supp. 3d 669 (W.D. Va. 2014) ......................................................... 22

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
  586 U.S. ___, 2019 WL 122164 (U.S. Jan. 8, 2019) ............................... 13-14, 18

*Hicks v. Macy's Dept. Stores, Inc.,*
  C 06-02345 CRB, 2006 WL 2595941 (N.D. Cal. Sept. 11, 2006) .................. 14

*Iskanian v. CLS Transp. L.A., LLC,*
  59 Cal. 4th 348 (2014) ........................................................................ 11-12, 20

*Jenkins v. Sterling Jewelers, Inc.,*
  No. 17cv1999-MMA (BGS), 2018 WL 922386 (S.D. Cal. Feb. 16, 2018) ......... 20

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Kilgore v. KeyBank, Nat. Ass'n,*
  718 F.3d 1052 (9th Cir. 2013) ...................................................................... 10

*Mohamed v. Uber Techs., Inc.,*
  848 F.3d 1201 (9th Cir. 2016) ............................................... 10-11, 19-20

*Poublon v. C.H. Robinson Co.,*
  846 F.3d 1251 (9th Cir. 2017) ...................................................................... 13

*Rent-A-Center, W., Inc. v. Jackson,*
  561 U.S. 63 (2010) ......................................................................................... 19

*Roman v. Superior Court,*
  172 Cal. App. 4th 1462 (2009) ..................................................................... 13

*Sakkab v. Luxottica Retail North America, Inc.,*
  803 F.3d 425 (9th Cir. 2015) ................................................................. 12, 20

*Taft v. Henley Enters., Inc.,*
  No. SACV 15–1658–JLS, 2016 WL 9448485 (C.D. Cal. Mar. 2, 2016)...............20-21

*Thome v. U.S. Food & Drug Admin.,*
  No. C 11–00676 PSG, 2011 WL 3206910 (N.D. Cal. July 27, 2011) ........................ 23

*Wen-Chouh Lin v. Brodhead,*
  No. 1:09CV882, 2012 WL 4793710 (M.D.N.C. Oct. 9, 2012)................................. 22

**STATUTES**

9 U.S.C.
  § 1 *et seq.* (Federal Arbitration Act)........................................................ 5, 9
  § 2.................................................................................................................. 9, 14
  § 3.................................................................................................................. 20
  § 4.................................................................................................................. 9

28 U.S.C. § 1391(b) ..................................................................................... 1, 21

29 U.S.C. § 206 (Equal Pay Act of 1963)........................................................ 7

42 U.S.C. §§ 2000e *et seq.* (Civil Rights Act of 1964 Title VII) ....................... 7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Cal. Bus. & Prof. Code § 17200 (Unfair Competition Law)................................................7

Cal. Lab. Code § 1197.5 (California's Equal Pay Act) ....................................................7

Cal. Lab. Code § 2698 *et seq.* (Private Attorneys General Act)....................................1, 7

TREATISES

1 Bernard E. Witkin, Summary Of California Law, Contracts § 118
    (10th ed. 2005) .......................................................................................................15-16

I.   **INTRODUCTION**

Plaintiff Dawn Knepper, an experienced employment-law litigator and former non-equity shareholder in the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., sued in the Northern District of California in derogation of her contractual promise to arbitrate any disputes she may have with the Firm and/or any of its shareholders.  Judge Orrick held that Knepper bound herself to that arbitration agreement by failing to opt out of it when given the opportunity.  Dkt. 74.[1]  Because the agreement called for Knepper to arbitrate where she worked, in Orange County, Judge Orrick transferred the case to this Court.

This Court now should compel arbitration.  The arbitration agreement lawfully delegated to the arbitrator the question of the agreement's enforceability.  Therefore, after addressing two gateway issues reserved to it—(i) whether the arbitration agreement covers the claims asserted, and (ii) whether the class/collective-action waiver is enforceable—this Court should grant Defendants' petition, order arbitration of claims Knepper brought on an individual basis, and stay the Private Attorneys General Act representative claim (in count 8), pending the outcome of the arbitration.  *See infra* Sections II., III. and IV.A.

This Court need not do more than decide those threshold issues.  If Knepper still wishes to pursue her pending motion for leave to file a Second Amended Complaint (Dkt. 52-1) to add new claims, defendants, or plaintiffs, this Court should deny the motion without prejudice for the reasons set forth in Section IV.B.  Other courts have done just that with a plaintiff who seeks to expand a case, like this one, that should have been filed in arbitration in the first instance.  To the extent Knepper herself seeks to add new individual claims or defendants, she must pursue a motion for leave to do so with the arbitrator.  This Court is not the proper venue for Alicia Voltmer who worked in Texas, or Jocelyn Campanaro and Angelica Ochoa who worked in Colorado.  *See* 28 U.S.C. § 1391(b).  Knepper wants to add them to two counts that she may adjudicate *only* in an

---

[1]  All docket (Dkt.) references are to Northern District Case No. 3:18-CV-00303-WHO.

DEFENDANTS' PETITION TO COMPEL IND. ARBITRATION AND MOTION TO STAY ALL PROCEEDINGS

individual arbitration—violation of the federal Equal Pay Act and breach of fiduciary
duty.  Nor is this Court the proper forum for the proposed claims of former California
equity shareholder Tracy Warren, who signed an agreement requiring her to arbitrate her
claims in or near San Diego.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Knepper sues in derogation of her arbitration agreement, as shown below.  Judge
Orrick's opinion, rendered after consideration of a detailed record, briefs and
supplemental briefs, and oral argument, accurately summarized the facts and procedural
history, which are set forth in further detail below.

### A.    In 2016, Ogletree Created An Opt-Out Arbitration Program For All Non-Equity Shareholders And Other Personnel.

Ogletree is a labor-and-employment law firm with over 50 offices in 28 states, the
District of Columbia, the U.S. Virgin Islands, Canada, Mexico, and Europe.  Straky Decl.
¶ 2.  Knepper has been practicing law for approximately 18 years, 13 as an employment-
law litigator at Ogletree, where she worked in two of its offices:  San Antonio, Texas
(from 2005 to 2011) and Orange County, California (as a non-equity shareholder from
2012 through her resignation in January 2018).  First Am. Compl. (Dkt. 33) ¶¶ 5-6, 56;
Straky Decl. ¶ 4.  Knepper has defended employers in employment discrimination,
harassment, and retaliation cases, where she prepared motions to compel arbitration, and
advised employers with respect to employee arbitration programs and agreements.
Straky Decl. ¶ 5.

Judge Orrick carefully analyzed Ogletree's arbitration program.  Dkt. 74.  On
January 15, 2016, Ogletree sent a notice to Knepper and all other non-equity shareholder
personnel (including both lawyers and administrative staff) at their Firm email addresses.
The notice explained and attached two documents:  (i) Ogletree's Open Door Policy, and
(ii) a Mutual Arbitration Agreement ("Agreement").  *Id.* ¶ 6, Exhs. A-C; Berger Decl. ¶
3, Exh. A.  The notice and attached Open Door Policy reminded the recipients of the
Firm's policy against discrimination and retaliation and identified resources for

-2-

employees if they had a workplace concern or issue.  The notice and attached documents further explained that, in the event a dispute could not be resolved internally, Ogletree's arbitration program would apply to any future claims recipients might bring against Ogletree or its shareholders (or that Ogletree might bring against any of them), if they: (i) continued to work for Ogletree, and (ii) did not opt out of the program within six weeks (that is, by March 1, 2016).  Straky Decl. ¶¶ 6-7, Exhs. A & C.

The notice summarized the key provisions of the Agreement as follows:

- Both you and the Firm are agreeing to the arbitration of any disputes (with certain limited exceptions) before a neutral arbitrator.  This means that both parties agree to waive their right to a trial in a court before either a judge or a jury.

- The arbitration will be administered by the American Arbitration Association, a respected national provider of dispute-resolution services.

- The arbitrator has the same authority as a judge would have to award relief to individual claimants based on applicable laws and regulations.

- It is a mutual agreement, and it is a binding contract.

- Ogletree Deakins pays the costs of the arbitrator and the arbitration agency in excess of whatever the filing fee for filing a case in court would have been.

- Each party would pay his/her/its own attorney's fees, though the arbitrator would have the same right as a judge to award costs and fees to the prevailing party.

Straky Decl. ¶ 6, Exh. A, pp. 6-7.  The notice further explained that the "attached Mutual Arbitration Agreement is an important legal document, and [the recipient] may wish to seek guidance from private legal counsel." *Id.* at p. 7.  It also informed recipients that Ogletree's Director of Human Resources would be available to answer any questions. *Id.*

Recipients saw in three separate places that they would be bound by the Agreement unless they opted out of it.  First, the notice stated:

> You have the right to opt out of the arbitration program if you wish.  To do so, you must sign an Opt-Out form and return it to Kay Straky, the Firm's Director of Human Resources via email to Kay.Straky@ogletreedeakins.com, on or before March 1, 2016.
>
> The Opt-Out form is available under the "Resources" tab on the OD Connect homepage of the Firm's Human Resources Department.  *If you do not return an Opt-Out form by March 1, 2016 and remain employed by the Firm after that date, you will be deemed to have accepted the terms of the Agreement.*

*Id.,* Exh. A, p. 7. (emphasis added).

Second, the Agreement itself restated the instructions for opting out and repeated that failure to do so by March 1, 2016, and continuing to work thereafter, constituted acceptance of the Agreement:

> <u>Opt Out</u>.  Individual may opt out of this Agreement by delivering a completed and signed Opt-Out Form to the Director of Human Resources on or before March 1, 2016. Opt-Out Forms and instructions on how to return them are available on the OD Connect home page of the Human Resources Department, under the "Resources" tab.  *Failure to deliver an executed Opt-Out Form on or before March 1, 2016, and continued employment with the Firm after that date, shall be deemed acceptance of the terms of this Agreement.*

*Id.*, Exh. C, p. 11 (emphasis added).

Third, the Open Door Policy informed employees that the Agreement "is a separate and binding contract between the Firm and all employees who have not elected to opt out of it during the applicable opt-out period."  *Id.*, Exh. B (emphasis added).

The Agreement explained that it "is made in the course of interstate commerce; [and] that any arbitration under this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*" *Id.*, Exh. C, p. 11, § 9.

Recipients were requested to acknowledge receipt of the documents, but the arbitration contract was formed with or without that acknowledgment:  "Failure to deliver an executed Opt-Out Form on or before March 1, 2016, and continued employment with the Firm after that date, shall be deemed acceptance of the terms of this Agreement."  *Id.,* Exh. C., p. 11, § 11.

**B.**     **After Receiving Notice Of The Arbitration Program, Knepper Was Reminded—Twice—Of The Opt-Out Opportunity, But She Chose Not To Opt Out.**

Knepper has claimed that she did not know she had been sent an arbitration agreement.  Irrefutable evidence proves otherwise, and Judge Orrick so held.

Knepper's email account at the time ("Dawn.Knepper@ogletreedeakins.com") received the notice and attachments on January 15, 2016, at 4:47 a.m. Pacific Time (7:47 a.m. Eastern Time).  Berger Decl. ¶¶ 3-5, Exhs. A-B.  The "read receipt" message from Knepper's email account shows it was opened that day, at 6:32 a.m. Pacific Time. Berger Decl. ¶ 6, Exh. C.

On January 27, 2016, Vicki Myers, the Office Administrator for Ogletree's Orange County office, forwarded the January 15, 2016 email and attachments (Straky Decl. Exhibits A-C) to all original recipients in that office (including Knepper), and stated:

> If you haven't already done so, please sign and return a copy of the Mutual Arbitration Agreement to me as soon as possible.
>
> Also, please print your name under your signature to ensure that HR files your document in the correct HR file.  As indicated below:  *Signing the Agreement signifies that you understand you have the option to opt out and that if you do not opt out on or before March 1, 2016 you will be deemed to have accepted*

> the Agreement.  *You have the right to opt out of the arbitration program if you wish.  To do so, please read the instructions in the email below.*

Myers Decl. ¶ 4, Exhs. A-1 & A-2 (emphasis and highlighting in original); Berger Decl. ¶ 7, Exh. D.

On March 1, 2016 at 3:41 p.m., Myers sent still another email containing the same text and attachments, adding a reminder that the signed acknowledgements of understanding should be sent in that day.  Myers Decl. ¶ 5, Exhs. B-1 & B-2; Berger Decl. ¶ 8, Exh. E.  Knepper responded within five minutes, stating, "I will turn mine in tomorrow."  Myers Decl. ¶ 6, Exhs. C-1 & C-2; Berger Decl. ¶ 9, Exh. F.  The email string, bearing the yellow highlighting for emphasis in the original, is as follows:



Myers Decl. ¶ 6, Exh. C-2.[2]

---

[2] Knepper now contends that her response was ambiguous as to whether she was referring to the Agreement or an opt-out form.  It makes no difference.  The very sending of that message shows that she knew that the Agreement had been sent to her and that it had been received.

DEFENDANTS' PETITION TO COMPEL IND. ARBITRATION AND MOTION TO STAY ALL PROCEEDINGS

Ogletree tracked and maintained records of those employees who opted out of the Agreement.  Straky Decl. ¶ 8.  Nearly 12 percent of the 1,756 recipients opted out, including non-lawyer staff members.  *Id.*  In Ogletree's Orange County office, where Knepper worked, some secretaries, associates, of-counsel, and non-equity shareholders opted out.  *Id.*  But Knepper did not opt out and continued her employment thereafter.  *Id.*

On July 11, 2017—more than a year after she first received the Arbitration Agreement, and more than six months before she filed these related actions—Knepper forwarded a copy of the original email, the Agreement, and the other attachments to her personal email account:  dmknepper@gmail.com.  Berger Decl. ¶ 10, Exh. G.

### C.    <u>Knepper Has Refused To Arbitrate.</u>

On December 19, 2017, Ogletree's counsel of record contacted Knepper's attorneys, David Sanford and Jill Sanford of then-Sanford Heisler LLP, advised them of the existence of the Agreement, and informed them that Ogletree would move to compel arbitration if Knepper filed suit, as she had threatened, instead of pursuing her claims in arbitration.  Abell Decl. ¶ 2.

On January 12, 2018, Knepper nonetheless sued Ogletree in the Northern District of California, in what she styled as a class and collective action, alleging, on behalf of female *non-equity* shareholders, violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; the Equal Pay Act of 1963, 29 U.S.C. § 206; and related California statutes, including California's Equal Pay Act (Cal. Lab. Code § 1197.5), the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200), and the Labor Code Private Attorneys General Act (Cal. Lab. Code § 2698 *et seq.*) ("PAGA").  Dkt. 1.  On May 11, 2018, Knepper filed a First Amended Complaint, adding a cause of action for breach of fiduciary duty and two individual defendants, current Managing Shareholder Charles Matthew Keen and immediate past Managing Shareholder Kim Franklin Ebert.  Dkt. 33.

On June 25, 2018, Knepper proffered a proposed Second Amended Complaint.  It would add as named plaintiffs one former *equity* shareholder (a signatory to an arbitration agreement), three additional former non-equity shareholders (all based outside of

California), and additional defendants (one based within and two outside of California). *See* Dkt. 52-1; Straky Decl. ¶¶ 9.a.-f.  Ogletree opposed leave to amend, arguing that amendment was futile because:  (i) Knepper's claims are subject to mandatory arbitration in the Central District, (ii) the claims of the proposed named former *equity* shareholder, Warren, are subject to binding arbitration, and (iii) venue is not proper in California for the three proposed non-California non-equity shareholders.  Dkt. 59.

### D. Judge Orrick Found There Was an Agreement to Arbitrate and Granted Ogletree's Motion To Transfer To This Court.

Ogletree sought to enforce Knepper's contractual obligation to arbitrate her claims. Because the Agreement's specified arbitral venue is where the claimant lived and worked—in Knepper's case, Orange County—Ogletree sought to transfer venue to this Court, the only one with jurisdiction to compel arbitration here under the Federal Arbitration Act.  Judge Orrick received briefs and supplemental briefs, and heard oral argument.  On January 9, 2019, Judge Orrick issued an order thoroughly analyzing the arbitration program, recognizing its validity, and granting the motion to transfer venue so that Ogletree could proceed in this Court with its petition to compel arbitration and left to this Court the motion for leave to file the proposed Second Amended Complaint.  Dkt. 74.

### III. AFTER RESOLVING THE GATEWAY ISSUES RESERVED FOR A COURT, THIS COURT SHOULD COMPEL INDIVIDUAL ARBITRATION.

Only two gateway issues are before this Court:  (i) whether the Agreement covers some or all of the claims asserted, and (ii) whether the class/collective-action waiver is enforceable.  Both issues should be resolved in Ogletree's favor, and then the claims that Knepper brings on an individual basis should be ordered to individual arbitration, where Knepper can present her other contentions.

### A. The Federal Arbitration Act Requires Enforcement Of Arbitration Agreements According To Their Terms.

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), permits a party to a written arbitration agreement to petition for an order compelling the parties to arbitrate. 9 U.S.C. § 4. The FAA applies to contracts with employees, except for certain transportation workers. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).

The FAA requires only a minimal nexus to interstate commerce.[3] Ogletree manifestly is engaged in interstate commerce with more than 50 offices worldwide, and Knepper's job at Ogletree was related to that commerce. Straky Decl. ¶¶ 2, 4-5. Domestically, Ogletree has offices in 28 states, the District of Columbia, and the U.S. Virgin Islands. Its lawyers are admitted to practice in over 45 states, the U.S. Virgin Islands, Puerto Rico, and outside of the country. *Id.* ¶ 2. Its attorneys and staff communicate by telephone, email, U.S. mail, and courier services to clients and others across state lines. *Id.* Knepper personally has represented clients headquartered in multiple states outside of California; traveled and communicated across California state lines to conduct business; attended Ogletree firm retreats and other functions outside of California; and represented employers in employment litigation in both California and Texas. *Id.* ¶ 5. The Agreement specifically acknowledges that it "is made in the course of interstate commerce [and] that any arbitration under this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*" *Id.* ¶ 6, Exh. C, p. 11, § 9.

The FAA "reflects a 'liberal federal policy' in favor of arbitration." *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092 (9th Cir. 2014), quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 346 (2011). Where a dispute falls within the scope of an agreement to arbitrate, the FAA requires the district court to direct the parties to arbitrate. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

---

[3] The Supreme Court has interpreted the FAA's test—"involving commerce," 9 U.S.C. § 2—as words of art that signal the broadest permissible exercise of Congress' Commerce Clause power. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 274-77 (1995) (applying the FAA to a termite-extermination contract applicable to one single-family home).

**B.** **This Court Should Resolve In Ogletree's Favor The Two Gateway Questions Properly Before The Court.**

Only two questions are properly before this Court, and their resolution is straightforward.

### 1. The Agreement covers the claims here asserted.

A court addressing a motion to compel arbitration must decide as a gateway issue "whether the agreement encompasses the dispute at issue." *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092 (9th Cir. 2014), citing *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1057 (9th Cir. 2013) (en banc). Here, it plainly does.

The Agreement explicitly requires "final and binding arbitration" of "*all disputes* between [Knepper and Defendants Firm and shareholders], *including without limitation those relating to employment with the Firm* or separation therefrom." Straky Decl. ¶ 6, Exh. C, p. 10 (emphasis added). Every count in the First Amended Complaint relates to employment with Ogletree. Counts 1 through 6 allege discrimination, *inter alia*, in compensation and/or promotion under myriad federal and state statutes; count 7 alleges breach of fiduciary duty arising from such alleged discrimination; and counts 9 and 10 allege retaliation for exercising rights to object to the alleged discrimination. First Am. Compl. (Dkt. 33) ¶¶ 174-258, at pp. 30:16-41:25. The Agreement plainly covers all of these claims.

### 2. The class/collective-action waiver is enforceable.

The Agreement contains an express class/collective-action waiver (collectively, "class-action waiver"). It prohibits "consolidat[ion] [of] the claims of other individuals into a single proceeding," "a class, collective action, or representative action," and an award of relief "to a class or group of claimants." Straky Decl. ¶ 6, Exh. C, p. 11, § 6.

Whether the class-action waiver is enforceable is a gateway question of arbitrability for this Court to decide. First, the Agreement itself so provides. *Id.*, Exh. C, pp. 10-11, § 6 (avoiding potential ambiguity about class and collective actions by stating: "Notwithstanding anything herein or in AAA's rules to the contrary, *any dispute relating*

1  *to the interpretation, applicability, or enforceability, of this paragraph shall be resolved*

2  *by a court only and shall not be within the power of the arbitrator to resolve*.") (emphasis

3  added).  The Ninth Circuit endorsed a substantively identical delegation provision that

4  reserved for the court challenges to a class and collective action waiver.  *Mohamed v.*

5  *Uber Techs., Inc.*, 848 F.3d 1201, 1213-14 (9th Cir. 2016).  If anything, the Ogletree

6  Agreement is more clear than the Uber agreement.

7         Second, the issue is one for the court even without such a provision.  The Ninth

8  Circuit in *Eshagh v. Terminix Int'l Co.*, 588 F. App'x 703, 704 (9th Cir. 2014) treated the

9  class-action issue as a gateway question of arbitrability for the court to decide.  *Accord,*

10  *e.g.*, *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 971-73 (8th Cir. 2017)

11  ("[T]he question of class arbitration belongs with the courts as a substantive question of

12  arbitrability."; "To overcome the presumption [that the question belongs with the court],

13  the parties must clearly and unmistakably delegate the question to an arbitrator.");

14  *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 754, 756, 758, 761

15  (3d Cir. 2016) (availability of classwide arbitration is a question of arbitrability for the

16  court because "it implicates whose claims the arbitrator may adjudicate as well as what

17  types of controversies the arbitrator may decide" (internal quotation marks omitted);

18  plaintiff has "the onerous burden" of producing "clear[] and unmistakabl[e]" evidence

19  "overcoming the presumption in favor[] of judicial resolution of the question of class

20  arbitrability").

21         The United States Supreme Court and California Supreme Court both have ruled

22  that class-action waivers are enforceable, and that federal law preempts any state law to

23  the contrary.  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) ("In the [FAA],

24  Congress has instructed federal courts to enforce arbitration agreements according to

25  their terms—including terms providing for individualized proceedings."); *AT&T Mobility*

26  *LLC v. Concepcion*, 563 U.S. 333, 344, 352 (2011) (the FAA preempts any California

27  public policy against class-action waivers, because state law cannot "stand[] as an

28  obstacle" to enforcing arbitration agreements "according to their terms"); *Iskanian v. CLS*

1    *Transp. L.A., LLC*, 59 Cal. 4th 348, 366 (2014) ("*Concepcion* held that the FAA does

2    prevent states from mandating or promoting procedures incompatible with arbitration.

3    [California's] *Gentry* rule runs afoul of this latter principle.  We thus conclude in light of

4    *Concepcion* that the FAA preempts the *Gentry* rule.").

5          It is true, of course, that under the current state of the law, a waiver of

6    representative claims under PAGA is deemed unenforceable and not FAA-preempted.

7    *Iskanian*, 59 Cal. 4th at 384, 388-89; *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d

8    425, 439 (9th Cir. 2015).[4]  As such, the PAGA representative claim asserted in count 8

9    here is excluded at this time from coverage by the Agreement, which provides in Section

10   2 that "disputes and actions excluded from this Agreement are . . . claims for which this

11   Agreement would be invalid as a matter of law."[5]

12         Alternatively, the Agreement's reference to a PAGA claim (*i.e.*, the words "or

13   representative action" in Section 6) should be severed from the Agreement and the

14   remainder enforced in full.  The Agreement itself so provides:

15              Section 12:  <u>Miscellaneous</u>.  *If any provision of this Agreement*

16              *is deemed invalid or unenforceable, such provision shall be*

17              *modified automatically to the minimum extent necessary to*

18              *render the Agreement valid and enforceable*.  If a provision

19              conflicts with a mandatory provision of applicable law, the

20              conflicting provision shall be severed automatically and the

21              remainder of the Agreement construed to incorporate the

22              mandatory provision.  In the event of such automatic severance

23

24   _____

25   [4] The Ninth Circuit held, however, that "The California Supreme Court's decision in
     *Iskanian* expresses no preference regarding whether individual PAGA claims are litigated
     or arbitrated. It provides only that representative PAGA claims may not be waived
     outright.  59 Cal. 4th at 384, 173 Cal.Rptr.3d 289, 327 P.3d 129. The *Iskanian* rule does
26   not prohibit the arbitration of any type of claim."  *Sakkab*, 803 F.3d at 434.

27   [5] Defendants reserve the right to contend that a PAGA representative-action waiver is in
     fact itself FAA-protected, if and when the U.S. Supreme Court overrules *Iskanian* and
28   *Sakkab*.  For now, however, Ogletree recognizes that this Court will apply the
     *Iskanian/Sakkab* rule.

DEFENDANTS' PETITION TO
COMPEL IND. ARBITRATION AND MOTION TO
STAY ALL PROCEEDINGS

1    and modification with respect to a particular provision, the

2    remainder of this Agreement shall not be affected.  This

3    Agreement shall be construed as a whole, according to its fair

4    meaning, and not for or against any Party.

5    Straky Decl. Exh. C, p. 11 (emphasis added).

6    California law disfavors "throw[ing] the [arbitration] baby out with the bath

7    water." *Bolter v. Superior Court*, 87 Cal. App. 4th 900, 910 (2001).  "[T]he strong

8    legislative and judicial preference is to sever the offending term and enforce the balance

9    of the agreement . . . ." *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1477 (2009);

10   *see Farrar v. Direct Commerce, Inc.*, 9 Cal. App. 5th 1257, 1275 (2017) (compelling

11   arbitration after severing the "aspect in which the arbitration provision is substantively

12   unconscionable").  The Ninth Circuit in *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251

13   (9th Cir. 2017), enforced an agreement following severance of multiple provisions:

14   "Poublon argues that an agreement is necessarily permeated by unconscionability if more

15   than one clause in the agreement is unconscionable or illegal.  We disagree . . . ." *Id.* at

16   1273.

17   In sum, the class-action waiver is not a proper basis to decline to enforce the

18   Agreement.

19   **C.    This Court Should Compel Knepper To Individual Arbitration.**

20   Knepper has contended that (i) she did not know an arbitration agreement had been

21   presented to her; and (ii) she did not sign an acknowledgment of receipt.  After thorough

22   briefing and oral argument, Judge Orrick flatly rejected both contentions, citing, *e.g.*, *Cox*

23   *v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1120 (9th Cir. 2008) for the proposition that

24   whether Knepper is covered by the Agreement or was excused from failing to opt out are

25   issues to be decided by a court.  Judge Orrick's order aligns with the opinion issued the

26   day before by a unanimous  Supreme Court in *Henry Schein, Inc. v. Archer & White*

27   *Sales, Inc.*, 586 U.S. ___, 2019 WL 122164, at *4 (U.S. Jan. 8, 2019), explaining that

28   "before referring a dispute to an arbitrator, the court determines whether a valid

arbitration agreement exists.  See 9 U. S. C. § 2."  There is no reason to revisit Judge Orrick's analysis.

### 1.   Judge Orrick correctly found that Knepper received—and knew she had received—an arbitration agreement.

Judge Orrick reasoned as follows:  "Ogletree's records show that Knepper opened Email Notice 1 and *responded* to Email Notice 3.  That Knepper—an experienced employment law attorney—may not have read or fully comprehended the contents of those emails and their attachments does not preclude a determination that she is bound by the Arbitration Agreement."  Dkt. 74 at 8 (emphasis in original), *citing Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002) (rejecting argument that arbitration agreement was unenforceable even though plaintiff asserted he "did not have the degree of sophistication necessary to recognize the meaning of the opt-out provision or to know how to avoid it"); *Brookwood v. Bank of Am.*, 45 Cal. App. 4th 1667, 1673 (1996) (rejecting argument that plaintiff could "rescind a[n] [arbitration] contract simply by proving her unilateral ignorance of the contractual terms").

As Judge Orrick explained, "numerous courts (including from this District) have concluded that employees can be bound by agreements to arbitrate where, like the Notices and Agreement here, the relevant employer documents and communications disclose that an employee's failure to opt out manifests assent to an 'implied-in-fact' arbitration agreement."  Dkt. 74 at 9.  "For example, in *Hicks v. Macy's Dept. Stores, Inc.*, C 06-02345 CRB, 2006 WL 2595941 (N.D. Cal. Sept. 11, 2006) the company twice mailed a packet of information to plaintiff explaining the company's multi-step dispute resolution program.  'Step 4' was mandatory arbitration 'if the employee agreed to be bound by arbitration.'"  Dkt. 74 at 9.  The *Hicks* plaintiff did not return the opt-out form either time.  "[O]n those facts," Judge Orrick recounted, "'plaintiff impliedly agreed to arbitrate his employment-related claims.  Plaintiff's assertion that he did not intend to enter into an arbitration agreement with Macy's is incredible in light of plaintiff's failure to explain why he did not return the opt out form.'"  Dkt. 74 at 9; *see also Castro v.*

*Macy's, Inc.*, No. C 16-5991 CRB, 2017 WL 344978, at *3 (N.D. Cal. Jan. 24, 2017) (no affirmative agreement needed; the agreement was implied where employee failed to opt out); *Aquino v. Toyota Motor Sales USA, Inc.*, No. 15-cv-05281-JST, 2016 WL 3055897, at *4 (N.D. Cal. May 31, 2016) ("it is undisputed that Ms. Aquino received the Agreement (at least via email), that she failed to opt out of it, and that she continued to work at Toyota after the Agreement went into effect. . . .   Moreover, Ms. Aquino does not argue that she ever attempted to communicate her lack of consent to the Agreement to Toyota in any way.  Under California law, these facts establish an enforceable agreement between Ms. Aquino and Toyota."); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1106, 1109 (9th Cir. 2002) (arbitration agreement formed where the employees had to acknowledge receipt of the information packet but were not required to affirmatively agree to be bound; because the acknowledgement form clearly explained the right to and consequence of failing to opt out, "inaction is indistinguishable from overt acceptance" and "Najd assented to the [agreement] by failing to exercise his right to opt out of the program."); *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014) ("Where an employee continues in his or her employment after being given notice of the changed terms or conditions, he or she has accepted those new terms or conditions.").

Judge Orrick also noted Knepper's experience as an employment lawyer. "Knepper's experience as an employment law attorney is significant and weighs in favor of concluding that she is facially covered by the Arbitration Agreement."  Dkt. 74 at 10.

Even employees much less educated than Knepper bind themselves with opt-out agreements.  In *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002), for example, plaintiff alleged that "he did not have the degree of sophistication necessary to recognize the meaning of the [arbitration commitment]."  *Id.* at 1200.  The court nevertheless enforced the arbitration contract, applying "the general rule . . . that one . . . cannot complain of unfamiliarity with the language of the instrument."  *Id.* (citation and internal quotation marks omitted).  *See generally* 1 Witkin, Summary of Cal. Law (10th Ed. 2005) Contracts, § 118, p. 157 ("Ordinarily, one who accepts or signs an instrument,

which on its face is a contract, is deemed to consent to all its terms and cannot escape liability on the ground that he or she has not read it.").

### 2. Judge Orrick correctly held that an arbitration agreement was formed without a signed acknowledgment of receipt.

Some of the language used by Ogletree in its Notices, as well as the internal emails sent among Ogletree's HR personnel, show that Ogletree hoped that each covered individual would acknowledge receipt of the Agreement. Judge Orrick explained, however, that the documents all "explain that the signature indicates *only* that the signer understood that the signer had the right to opt out of the arbitration program." Dkt. 74 at 12 (emphasis in original). Judge Orrick then cited the critical language in each one:

> *See* Arbitration Agreement ("***Special Note***: *This Agreement is an important document that affects your legal rights. You should familiarize yourself with it. By signing below, you acknowledge that you understand you have the option to opt out of this Agreement by returning an Opt Out form to the Director of Human Resources on or before March 1, 2016 and that failure to return an Opt Out form and remaining in the employment of the Firm after that date will be deemed an acceptance of this Agreement.*"); *see also* Email Notice 1 ("***Please sign and return a copy of the Mutual Arbitration Agreement to your Office Administrator. Signing the Agreement signifies that you understand you have the option to opt out and that if you do not opt out on or before March 1, 2016 you will be deemed to have accepted the Agreement.***"); Email Notice 2 ("As indicated below: *Signing the Agreement signifies that you understand you have the option to opt out and that if you do not opt out on or before March 1, 2016 you will be deemed to have accepted the Agreement.*"); Email Notice 3

1    (same).

2  *Id.*

3        Contract formation occurred not by any signature, but by continuing to work.

4  Judge Orrick explained that Knepper was advised in three separate places that signing the

5  Agreement was only necessary to *acknowledge receipt* of the materials, not to *assent* to

6  them.  *Id.* at 4-5.  The cover email explained:

7        **Please sign and return a copy of the Mutual Arbitration**

8        **Agreement to your Office Administrator.  Signing the**

9        **Agreement signifies that you understand you have the option**

10       **to opt out and that if you do not opt out on or before March 1,**

11       **2016 you will be deemed to have accepted the Agreement.**

12  *Id.* at 4; Straky Decl., Exh. A, p. 7 (emphasis in original).  The Agreement itself stated:

13       ***Special Note***: *This Agreement is an important document that*

14       *affects your legal rights.  You should familiarize yourself with*

15       *it.  By signing below, you acknowledge that you understand you*

16       *have the option to opt out of this Agreement by returning an*

17       *Opt Out form to the Director of Human Resources on or before*

18       *March 1, 2016 and that failure to return an Opt Out form and*

19       *remaining in the employment of the Firm after that date will be*

20       *deemed an acceptance of this Agreement.*

21  Dkt. 74 at 5; Straky Decl., Exh. C., p. 11 (emphasis in original).  And both of the Orange

22  County Office Administrator's reminder emails to Knepper stated:

23       If you haven't already done so, . . . sign and return a copy of the

24       Mutual Arbitration Agreement to me as soon as possible.  Also,

25       please print your name under your signature to ensure that HR

26       files your document in the correct HR file.  As indicated below:

27       *Signing the Agreement signifies that you understand you have*

28       *the option to opt out and that if you do not opt out on or before*

==March 1, 2016 you will be deemed to have accepted the
Agreement.==

You have the right to opt out of the arbitration program if you

wish.  To do so, please read the instructions in the email below.

Dkt. 74 at 5; Myers Decl. ¶¶ 4-5, Exhs. A-1, A-2, B-1 & B-2 (emphasis and highlighting
in original).

Here, Judge Orrick noted, Knepper "did . . . affirmatively acknowledge receipt of
notice about both the arbitration program and the right to opt out when she responded on
March 1, 2016 to Email Notice 3.  She says that she cannot currently recall her
understanding of or knowledge of what she meant by that response, but that does not alter
her acknowledgement of receipt of the information on that date."  Dkt. 74 at 11.  Judge
Orrick found inapposite cases declining to enforce arbitration agreements where the
employers expressly sought or required written employee *consent* to an arbitration
agreement and failed to obtain it.  Dkt. 74 at 12 n.8.

### D.    The Agreement Lawfully Delegated To The Arbitrator Knepper's Unconscionability Claim.

Knepper apparently contends that there is something unconscionable about the
Agreement.  There is no merit to such a contention, as Ogletree demonstrated previously
in this case (Dkt. 66, Defs.' Br. 10-14).  But this Court need not consider those issues
here, because the Agreement delegated that issue (and others) to the Arbitrator.

### 1.    Parties to an arbitration agreement lawfully may delegate to the arbitrator even gateway questions of arbitrability.

Just weeks ago, the Supreme Court reiterated that the FAA "allows parties to agree
by contract that an arbitrator, rather than a court, will resolve threshold arbitrability
questions . . . ."  *Henry Schein, Inc.*, 586 U.S. ___, 2019 WL 122164, at *2.  Even
gateway issues may be delegated to the arbitrator where "the parties *clearly and
unmistakably* [so] provide."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)

1   (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)

2   (emphasis in original)); *accord Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 79

3   (2010) (where an agreement contains a "delegation [provision that] is clear and

4   unmistakable" and plaintiff alleges the entire agreement is invalid, the arbitrator shall

5   decide the issues, except where plaintiff challenges the delegation provision itself).

6        The Ninth Circuit's recent decision in *Mohamed v. Uber Techs., Inc.*, 848 F.3d

7   1201 (9th Cir. 2016) is illustrative.  Uber's arbitration agreement, like the Agreement

8   here, delegated to the arbitrator all arbitrability challenges, *except for* challenges to the

9   waiver of class and collective actions.  *Id*. at 1208.  The Ninth Circuit enforced the

10  delegation because the clause describing the scope constituted a lawful "clear and

11  unmistakable" delegation to the arbitrator of most enforceability issues.   *Id*. at 1208-9.

12       **2.**     **Knepper's Agreement similarly delegated to the arbitrator most**

13            **enforceability issues, including any question of unconscionability.**

14       The Agreement provides:

15            Section 6:  Authority of the Arbitrator.  Except as provided

16            below, *the arbitrator shall have the authority to resolve any*

17            *dispute relating to the interpretation, applicability,*

18            *enforceability, or formation of this Agreement, including*

19            *without limitation any claim that the Agreement is void or*

20            *voidable*.

21  Straky Decl. Exh. C, pp. 10-11, § 6 (emphasis added).

22       Knepper's Agreement does exactly what Uber's agreement did:  delegate all

23  enforceability issues to the arbitrator, except (as shown above) those pertaining to the

24  waiver of any right to participate in class and collective actions.  As Judge Orrick held:

25  "Her substantive unconscionability arguments are . . . questions [that] are to be resolved

26  by the arbitrator."  Dkt. 74 at 14.  "The delegation provision is clear and not

27  unconscionable.  Knepper's arguments challenging the Agreement must be resolved by

28  the arbitrator."  *Id*.

**IV.   THE COURT SHOULD DENY WITHOUT PREJUDICE THE PENDING MOTION FOR LEAVE TO AMEND AND STAY THE PAGA REPRESENTATIVE CLAIM AND ALL OTHER PROCEEDINGS PENDING THE OUTCOME OF ARBITRATION.**

**A.   The PAGA Representative Claim Should Be Stayed Pending The Arbitration.**

Knepper, the only party plaintiff, is bound to arbitrate.  The FAA directs courts to stay all proceedings pending completion of the arbitration.  *See* 9 U.S.C. § 3 (courts "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement").  Given that Knepper's PAGA representative claim is derivative of her remaining claims, the Court should stay the PAGA representative claim pending the outcome of the parties' arbitration.  Doing so would serve the interests of justice, avoid prejudice to either party, and conserve party and court resources by eliminating the cost of dual proceedings and avoiding the possibility of inconsistent outcomes.[6]

Courts faced with arbitrable claims combined with a nonarbitrable PAGA representative claim routinely stay the PAGA action while the arbitration proceeds.  *See, e.g.*, *Jenkins v. Sterling Jewelers, Inc.*, No. 17cv1999-MMA (BGS), 2018 WL 922386, at *8 (S.D. Cal. Feb. 16, 2018) (granting motion to compel arbitration of non-PAGA claims and staying PAGA claims pending the outcome of the arbitration; "'Plaintiff's PAGA claims are derivative in nature of her substantive claims that will proceed to arbitration, and the outcome of the nonarbitrable PAGA claims will depend upon the arbitrator's decision.'") (citations omitted); *Taft v. Henley Enters., Inc.*, No. SACV 15–1658–JLS (JCGx), 2016 WL 9448485, at *10 (C.D. Cal. Mar. 2, 2016) (granting motion to compel

---

[6] Defendants reserve the right to contend that the representative-action waiver is in fact itself FAA-protected, move to compel arbitration of Knepper's individual PAGA claim (if any), and move for dismissal of the PAGA representative claim if and when the Supreme Court overrules *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014) and *Sakkab v. Luxottica Retail North America, Inc.*, 803 F.3d 425 (9th Cir. 2015).

arbitration of plaintiff's individual non-PAGA claims and staying all proceedings during

arbitration, including plaintiff's PAGA claim); *Alvarez v. AutoZone, Inc.*, No. EDCV 14–

02471–VAP (SPx), 2015 WL 13427751, at *2-3 (C.D. Cal. July 8, 2015) (granting

motion to stay plaintiff's PAGA claims pending arbitration of individual claims: "The

Court finds that it would be economical for the Court, and both parties, if the PAGA

claims were stayed.  This course of action would circumvent simultaneous and

duplicative litigation of the same set of issues, facts, and questions of law.").

### B.   The Court Should Deny The Pending Motion For Leave To Amend And Stay All Other Proceedings Pending The Arbitration.

Knepper's motion for leave to file a Second Amended Complaint (Dkt. 52-1) does

not change the analysis.  That motion should be denied without prejudice, or

alternatively, stayed as well.

Therein, Knepper attempts to add as named plaintiffs three non-California former

non-equity shareholders who never worked in this District.  *Id.*; Straky Decl. ¶ 9.b.-d.

This Court is not the proper venue for the claims they propose to assert.  The three seek

to join only claims for violation of the Equal Pay Act (proposed count 3) and breach of

fiduciary duty (proposed count 7), but they cannot tether themselves in California to

Knepper because she, too, cannot litigate those claims in this Court.  Rather, Knepper

may pursue those claims *only* in arbitration.  As Ogletree explained in its Opposition to

the Motion for Leave to Amend, Dkt. 59 at 1:9-2:28 and 7:1-8:17, venue for the non-

California plaintiffs on their two proposed claims lies in Texas (Voltmer) or Colorado

(Campanaro and Ochoa).  *See* 28 U.S.C. § 1391(b) (venue proper in a judicial district in

which a substantial part of the events or omissions giving rise to the claim occurred);

Straky Decl. ¶ 9.b.-d.

Knepper's motion for leave also seeks to add one California plaintiff, former *equity*

shareholder Tracy Warren, who worked out of a San Diego office but was

administratively assigned to Ogletree's Orange County office.  Dkt. 52-1; Straky Decl. ¶

9.a.  Warren and all other equity shareholders are signatories to the Shareholder

Management Agreement that requires arbitration of Warren's (and all equity shareholders') claims "in or near the city in which Shareholder . . . was last employed by [Ogletree]." *See* Dkt. 59-1 (Gicking Decl.) ¶ 2, Exh. A, p. 32, § 9.04.  Section 9.06 of the Shareholder Management Agreement's arbitration article contains a class/collective-action waiver.  *Id.*, Exh. A., p. 33, § 9.06.  Thus, Warren's individual claims likewise belong in arbitration, and the three non-Californians cannot tether their Equal Pay Act and fiduciary duty claims to her, either.

Issues like these recur in the cases, and courts consistently compel arbitration without ruling on a motion to amend to add new plaintiffs or denying such motions.  *Green v. Zachry Indus., Inc.*, 36 F. Supp. 3d 669 (W.D. Va. 2014), a putative class action, is precisely on point.  Plaintiff Green had an enforceable pre-dispute arbitration agreement.  She sought to amend the complaint to add two new named plaintiffs.  The court granted defendant's motion to compel arbitration and denied plaintiff's motion for leave to amend.  Because there is "a valid and enforceable arbitration agreement," it follows that "this case will be stayed in favor of arbitration, [and] the plaintiff's motion for leave to add party plaintiffs and amend the complaint will be denied."  *Id.* at 678-79.

Other cases hold similarly.  *See, e.g.*, *Castle v. Wells Fargo Fin., Inc.*, No. C 06-4347 SI, 2007 WL 703609, at *3 (N.D. Cal. Mar. 5, 2007) (after defendant moved to compel arbitration against the named plaintiff and plaintiff moved to amend the complaint to add additional class representatives, the court held that "the better course is to first determine the enforceability of the arbitration agreements . . . .  Accordingly, the Court DENIES plaintiff's motion[] [to amend] without prejudice to renewal [later]."); *Wen-Chouh Lin v. Brodhead*, No. 1:09CV882, 2012 WL 4793710, at *7 (M.D.N.C. Oct. 9, 2012) (deciding arbitration issue first and deferring ruling on motions to amend the complaint; "Should the Court determine that an agreement to arbitrate exists between the Parties, the Court would lack jurisdiction to address Plaintiff's Motions to Amend."); *Denari v. Rist*, No. 10–cv–2704, 2011 WL 332543, at *11 n.5 (N.D. Ill. Jan. 31, 2011) ("In view of the dismissal of this case on the ground that Plaintiff's claims are

subject to arbitration, the Court declines to address Plaintiff's request for leave to amend his complaint . . . ."); *cf. Thome v. U.S. Food & Drug Admin.*, No. C 11–00676 PSG, 2011 WL 3206910, at *2 (N.D. Cal. July 27, 2011) (because the named plaintiff could not proceed with plaintiff's claim in court, the court declined to consider a proposed amended complaint adding a new plaintiff).

## V.   **CONCLUSION**

Defendants request that this Court compel Knepper to arbitrate the claims she brought on an individual basis, and stay the PAGA representative claim (in count 8) and all other proceedings and issues pending the completion of the arbitration.  Knepper's motion for leave to file a Second Amended Complaint (Dkt. 52-1) should be denied without prejudice, or alternatively, stayed as well.

DATED:  January 22, 2019          PAUL HASTINGS LLP


By: _____/s/ Nancy L. Abell_____
                    Nancy L. Abell


By: _____/s/ Paul W. Cane, Jr._____
                    Paul W. Cane, Jr.

Attorneys for Defendants
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.,
CHARLES MATTHEW KEEN
and KIM FRANKLIN EBERT

LEGAL_US_W # 97265162.2