UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-00060-JVS-ADS<br>2:19-cv-00527-JVS-ADS | Date | March 26, 2019 |
| Title | Dawn Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C., et al. | | |

Present: The Honorable    James V. Selna

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:           Attorneys Present for Defendants:

Not Present                                               Not Present

**Proceedings:**   **(IN CHAMBERS) Order Regarding Motion to Compel Arbitration, Motion to Stay All Proceedings, and Motion for Leave to Amend**

   Defendant Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree"), Charles Matthew Keen ("Keen"), and Kim Franklin Ebert ("Ebert") (together—"Defendants") filed a Motion to Compel arbitration and Stay All Proceedings. (Mot., Dkt. No. 92-1.) Plaintiff Dawn Knepper ("Knepper") opposed the motion. (Opp'n, Dkt. No. 102.) Defendants filed a reply. (Reply, Dkt. No. 103.)

   Pending before the Court is also Knepper's Motion for Leave to Amend. (Mot., Dkt. No. 52.) Defendants have opposed the motion. (Opp'n, Dkt. No. 59.) Knepper filed a reply. (Reply, Dkt. No. 60.) The parties' briefs regarding the Motion to Compel Arbitration and to Stay All Proceedings likewise contain their positions on the Motion for Leave to Amend. (Mot., Dkt. No. 92-1; Opp'n, Dkt. No. 102; Reply, Dkt. No. 103.)

   For the following reasons, the Court **grants** the Motion to Compel Arbitration, **grants in part and denies in part** the Motion for Leave to Amend, and **grants** the Motion to Stay All Proceedings.

I. BACKGROUND

   On January 15, 2016 at 4:45 a.m. PST, Ogletree sent out an email to staff, including Knepper, titled "IMPORTANT – Two New Programs for 2016," that described the firm's new "Open Door Policy & Mutual Arbitration Agreement."[1] ("Email Notice

---

[1] The facts of the case are well-known to the parties. The Court incorporates the facts and citations from the decision on the Motion to Transfer to this background section, as well as additional

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-00060-JVS-ADS<br>2:19-cv-00527-JVS-ADS | Date | March 26, 2019 |
|---|---|---|---|
| Title | Dawn Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C., et al. | | |

1", Dkt. No. 28-1, Ex. A; Berger Decl., Dkt. No. 28 ¶¶ 4-6.) Knepper opened Email Notice 1 on January 15, 2016, at 6:32 a.m. PST. (Berger Decl., Dkt. No. 28 ¶ 6.) Email Notice 1 explained that "the attached Mutual Arbitration Agreement ["Arbitration Agreement"] provides that you and the Firm both agree to submit such matters to binding arbitration. The Mutual Arbitration Agreement builds on an arbitration program that was implemented in January 2014 that has been applicable to all Equity Shareholders since that time. The Firm is now expanding arbitration to apply to the rest of our community." (Email Notice 1, Dkt. No. 28-1, Ex. A at 1.) The Arbitration Agreement is described as a "mutual agreement, and it is a binding contract." Id. at 2. The Notice went on:

> You have the right to opt out of the arbitration program if you wish. To do so, you must sign an Opt-Out form and return it to Kay Straky, the Firm's Director of Human Resources via email to Kay.Straky@ogletreedeakins.com, on or before March 1, 2016. The Opt-Out form is available under the "Resources" tab on the OD Connect homepage of the Firm's Human Resources Department. If you do not return an Opt-Out form by March 1, 2016 and remain employed by the Firm after that date, you will be deemed to have accepted the terms of the Agreement.

Id. The section describing the Arbitration Agreement concluded:

> ***Please sign and return a copy of the Mutual Arbitration Agreement to your Office Administrator. Signing the Agreement signifies that you understand you have the option to opt out and that if you do not opt out on or before March 1, 2016 you will be deemed to have accepted the Agreement.***

Id. at 3 (emphasis in original). The attached Arbitration Agreement provided that:

> Ogletree Deakins (the "Firm") and the undersigned ("Individual") recognize that disputes may arise in the workplace setting from time to time that cannot be resolved without the assistance of an

---

facts relevant to the Motion to Compel Arbitration and Motion for Leave to Amend. See Order, Dkt. No. 74.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-00060-JVS-ADS<br>2:19-cv-00527-JVS-ADS | Date | March 26, 2019 |
|---|---|---|---|
| Title | Dawn Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C., et al. | | |

> outside party. Individual and the Firm (collectively "the Parties") therefore enter into this Agreement to provide for arbitration as the forum for resolving any such disputes:

(Arbitration Agreement, Dkt. No. 28-1 at ECF page 10 of 40).  Pertinent here, paragraph 11 provides:

> 11.  Opt Out.  Individual may opt out of this Agreement by delivering a completed and signed Opt-Out Form to the Director of Human Resources on or before March 1, 2016.  Opt-Out Forms and instructions on how to return them are available on the OD Connect home page of the Human Resources Department, under the "Resources" tab.  Failure to deliver an executed Opt-Out Form on or before March 1, 2016, and continued employment with the Firm after that date, shall be deemed acceptance of the terms of this Agreement.

Id.  At the end of the Arbitration Agreement, above the signature line, is the following:

> ***Special Note***: *This Agreement is an important document that affects your legal rights.  You should familiarize yourself with it.  By signing below, you acknowledge that you understand you have the option to opt out of this Agreement by returning an Opt Out form to the Director of Human Resources on or before March 1, 2016 and that failure to return an Opt Out form and remaining in the employment of the Firm after that date will be deemed an acceptance of this Agreement.*

Id. (emphasis in original).  The Arbitration Agreement also contains a collective action waiver and a delegation clause that states:

> Because this Agreement is intended to resolve the particular dispute as quickly as possible, the arbitrator shall not have the authority to consolidate the claims of other individuals into a single proceeding, to fashion a proceeding as a class, collective

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-00060-JVS-ADS<br>2:19-cv-00527-JVS-ADS | Date | March 26, 2019 |
|---|---|---|---|
| Title | Dawn Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C., et al. | | |

> action, or representative action, or to award relief to a class or group of claimants. Notwithstanding anything herein or in AAA's rules to the contrary, any dispute relating to the interpretation, applicability, or enforceability, of this paragraph shall be resolved by a court only and shall not be within the power of the arbitrator to resolve.

<u>Id.</u>

On January 27, 2016, at 4:31 p.m., Vicki Myers sent an e-mail to all Orange County non-equity shareholders, of counsel, staff attorneys, associates, and staff (including the e-mail address the Firm assigned to Dawn Knepper: Dawn.Knepper@ogletreedeakins.com). ("Email Notice 2", Dkt. No. 28-4, Ex. D; Berger Decl., Dkt. No. 28 ¶ 7.) Email Notice 2 explained:

> If you haven't already done so, please sign and return a copy of the Mutual Arbitration Agreement to me as soon as possible. Also, please print your name under your signature to ensure that HR files your document in the correct HR file.
>
> As indicated below: *Signing the Agreement signifies that you understand you have the option to opt out and that if you do not opt out on or before March 1, 2016 you will be deemed to have accepted the Agreement.*
>
> You have the right to opt out of the arbitration program if you wish. To do so, please read the instructions in the email below.

(Email Notice 2, Dkt. No. 28-1 at ECF page 17 of 40 (emphasis in original).) Email Notice 2 then included the full text from Email Notice 1 as well as the attached Arbitration Agreement.

On March 1, 2016, at 3:41 p.m. PST, Vicki Myers sent an e-mail to all Orange County non-equity shareholders, of counsel, staff attorneys, associates, and staff (including the e-mail address the Firm assigned to Dawn Knepper:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-00060-JVS-ADS<br>2:19-cv-00527-JVS-ADS | Date | March 26, 2019 |
|---|---|---|---|
| Title | Dawn Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C., et al. | | |

Dawn.Knepper@ogletreedeakins.com). ("Email Notice 3", Dkt. No. 28-1, Ex. E; Berger Decl., Dkt. No. 28 ¶ 8.)  Email Notice 3 explained:

> As a reminder, if you haven't already done so, today is the deadline to sign and return a copy of the Mutual Arbitration Agreement to me.  Also, please print your name under your signature to ensure that HR files your document in the correct HR file.
>
> As indicated below: *Signing the Agreement signifies that you understand you have the option to opt out and that if you do not opt out on or before March 1, 2016 you will be deemed to have accepted the Agreement.*
>
> You have the right to opt out of the arbitration program if you wish.  To do so, please read the instructions in the email below.

(Email Notice 3, Dkt. No. 28-1 at ECF pg. 24 of 40) (emphasis in original).

On March 1, 2016 at 3:46 p.m. PST, Knepper responded to Myers' email, saying "I will turn mine in tomorrow.  Thanks." (Response, Dkt. No. 28-1, Ex. F at ECF pg. 31 of 40; Berger Decl., Dkt. No. 28 ¶ 9.)  There is no dispute that Knepper did not turn in either a signed Arbitration Agreement or an opt out form.
In her declaration, Knepper states that she does not "recall receiving, viewing, or opening any email from anyone at Ogletree that contained an arbitration agreement that would cover disputes between the Firm and me," she does not "recall receiving, viewing, or opening any email from anyone at Ogletree that discussed opting-out of an arbitration agreement that would cover disputes between the Firm and me," and she "does not recall reviewing any arbitration agreement that would cover disputes between the Firm and me, and I did not consider entering into any arbitration agreement that would cover such disputes.  I did not knowingly enter into any arbitration agreement that would cover disputes between the Firm and me. Had I been aware that I needed to opt-out of the agreement, I would have done so." (Knepper Decl. Dkt. No. 70-6 ¶¶ 2-4.)  Knepper does not recall sending and cannot recall what she meant or what the context was for her March 1, 2016 response to Myers that "I will turn mine in tomorrow.  Thanks." Id. ¶ 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-00060-JVS-ADS<br>2:19-cv-00527-JVS-ADS | Date | March 26, 2019 |
|---|---|---|---|
| Title | Dawn Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C., et al. | | |

She declares that given the attention demanded by her clients, other work, and family obligations, it was not uncommon for her to "overlook administrative emails." Id. ¶ 7. She has no knowledge of whether the Arbitration program was discussed at Ogletree's October 2015 attorney retreat (which she did not attend) or at the January 2016 annual shareholder meeting (which she did attend). Id. ¶ 8.

 Knepper seeks to represent a class of current and former non-equity shareholders of defendant Ogletree. She claims that Ogletree engaged in systematic gender discrimination and asserts claims for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), violation of the Equal Pay Act of 1963, 29 U.S.C. §§ 206 et seq. ("EPA"), and violation of related California statutes, including a Private Attorney General Act ("PAGA") representative claim. (FAC, Docket No. 34 ¶ 4.) On the same day that Knepper filed her class and collective action, she also filed a declaratory relief action. See Case No. 18-cv-00304. In that case, she seeks a declaration that she is not bound by any agreement to arbitrate with respect to the claims asserted in Case No. 18-00303, that she did not waive her right to bring a class or collective action, and that she did not delegate to an arbitrator the issue of arbitrability. In the alternative, if an agreement was formed, Knepper seeks a declaratory judgment that any provisions purporting to waive her right to bring a class or collective action or delegate issues of arbitrability to an arbitrator are unenforceable. Case. No. 18-cv-00304, Complaint ¶ 4.

 On June 25, 2018, Knepper sought leave to file a Second Amended Complaint ("SAC") to add as named plaintiffs Tracy Warren ("Warren"), a former equity shareholder, and former nonequity shareholders Jocelyn Campanaro ("Campanaro"), Angelica Ochoa ("Ochoa"), and Alicia Voltmer ("Voltmer"). (Mot., Dkt. No. 52-1.) Warren is subject to an arbitration agreement. (Shareholder Management Agreement, Dkt. No. 59-1, Ex. A, p. 32 § 9.04.) Campanaro and Ochoa are based in Colorado, and Voltmer is based in Texas. (Straky Decl., Dkt. No. 92-5 ¶ 9.) Knepper also sought to add three additional defendants and several additional claims. (Mot., Dkt. No. 52-1.)

 Ogletree moved to transfer venue in both cases to the Central District of California. (Mot., Dkt. No. 28.) Judge Orrick determined that he "could not resolve the motions to transfer (as well as the motion for leave to file the proposed SAC) without determining whether Knepper was at least facially covered by an agreement to arbitrate with Ogletree." (Order, Dkt. No. 74 at 3.) The parties provided supplemental briefing on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-00060-JVS-ADS<br>2:19-cv-00527-JVS-ADS | Date | March 26, 2019 |
|---|---|---|---|
| Title | Dawn Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C., et al. | | |

whether Knepper was covered by the Arbitration Agreement. Id. Judge Orrick ultimately determined that "Knepper is at least facially bound to the Arbitration Agreement by her failure to opt out." Id. at 9. In addition, Judge Orrick deferred for resolution by this Court the motion for leave to amend. Id.

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., a party to an arbitration agreement may bring a motion in federal district court to compel arbitration and stay the proceeding pending resolution of the arbitration. 9 U.S.C. §§ 3–4. Ambiguities as to the scope of the arbitration provision must be interpreted in favor of arbitration. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995); see also AT&T Techs. Inc. v. Commc'n Workers of Am., 475 U.S. 643, 650 (1986). The FAA also requires "district courts to compel arbitration even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." Fisher v. A.G. Becker Paribas, Inc., 791 F.2d 691, 698 (9th Cir. 1986).

The FAA creates a "national policy favoring arbitration." Nitro-Lift Techs, LLC v. Howard, 568 U.S. 17, 20 (2012). "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011) citing Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989). The FAA states that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

A district court may not review the merits of the dispute when determining whether to compel arbitration. Cox v. Ocean View Hotel, Corp., 533 F.3d 1114, 1119 (9th Cir. 2008). Instead, the FAA limits the district court's role "to determining (1) whether a valid agreement to arbitrate exists and, if it does (2) whether the agreement encompasses the dispute at issue." Id. (internal citation and quotation omitted). If a valid arbitration agreement exists, a district court must enforce the arbitration agreements according to its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-00060-JVS-ADS<br>2:19-cv-00527-JVS-ADS | Date | March 26, 2019 |
|---|---|---|---|
| Title | Dawn Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C., et al. | | |

terms. Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004).

A district court applies state contract law to determine whether the parties are required to arbitrate and may consider state-law challenges to the arbitration agreement's validity, such as unconscionability. Cox, 533 F.3d at 1121. A court may consider evidence beyond the complaint in ruling on a motion to compel. See Guadagno v. E*Trade Bank, 592 F. Supp. 2d 1263, 1266–69 (C.D. Cal. 2008) (examining declarations and exhibits in ruling on a motion to compel arbitration under the FAA). The party seeking to compel arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence standard. Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014). If the moving party carries this burden, the opposing party must prove any contrary facts by the same burden. Castillo v. CleanNet USA, Inc., No. 17-CV-07277-JCS, 2018 WL 6619986, at *10 (N.D. Cal. Dec. 18, 2018) (citing Bruni v. Didion, 160 Cal. App. 4th 1272, 1282 (Cal. App. 2008) ("The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense.")). "In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." Bruni, 160 Cal. App. 4th at 1282.

### III. DISCUSSION

#### A. No Evidentiary Hearing Is Required

Knepper urges the Court to hold an evidentiary hearing to resolve disputed facts to determine whether there is a valid contract for arbitration. (Opp'n, Dkt. No. 102 at 6. See Berman v. Freedom Fin. Network, LLC, No. 18-CV-01060-DMR, 2018 WL 2865561, at *2 (N.D. Cal. June 11, 2018) (citations omitted) ("When a party opposes a motion to compel arbitration on the ground that no agreement to arbitrate was made, the court should give to the opposing party the benefit of all reasonable doubts and inferences that may arise. Only when there is no genuine issue of fact concerning the formation of the [arbitration] agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement."). According to Knepper, "there is a triable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-00060-JVS-ADS<br>2:19-cv-00527-JVS-ADS | Date | March 26, 2019 |
|---|---|---|---|
| Title | Dawn Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C., et al. | | |

question of fact as to whether the terms of the employer's arbitration agreement were known to Plaintiff and whether she knowingly and voluntarily agreed to be bound by those terms by remaining employed without opting out." (Opp'n, Dkt. No. 102 at 7.)

Defendants instead contend that no factual dispute requires an evidentiary hearing and that "Knepper fails to explain what relevant factual issue requires live testimony." (Reply, Dkt. No. 103 at 1.) Defendants point out that the following are undisputed: (1) the text of the Arbitration Agreement; (2) the communications from Ogletree transmitting the Arbitration Agreement and opt-out invitation; (3) there was no other verbal communication regarding the Arbitration Agreement. Id. at 2. Meanwhile, Defendants cast doubt on Knepper's statements that she does not recall receiving the Arbitration Agreement and opt-out packet because she responded via e-mail that she would "turn mine in tomorrow" when she received a reminder regarding the Arbitration Agreement. (Id.; Response, Dkt. No. 28-1, Ex. F; Knepper Decl., Dkt. No. 102-2, Ex. B ¶¶ 3-6.)

The Court agrees with Defendants that no evidentiary hearing is required because there is no genuine dispute of material fact at issue. That Knepper does "not recall receiving, viewing or opening any email from anyone at Ogletree that contained an arbitration that would cover disputes" and does "not recall sending this email" response regarding "turn[ing] mine in tomorrow" merely indicates her lack of memory about the email communications, not that these events did not take place. (Knepper Decl., Dkt. No. 102-2, Ex. B ¶¶ 3-6.) Rather, Knepper confirms that she had received the email communication well before any lawsuit was filed because she found the emails in July of 2017. Id. ¶ 5. Even taken in the light most favorable to Knepper, the only potential dispute is whether Knepper read the three email notices, not whether she received them. Thus, the Court finds that no oral testimony or evidentiary hearing is required to decide the motion to compel arbitration. See Bruni, 160 Cal. App. 4th at 1282.

**B.     Motion to Compel Arbitration**

Knepper argues that she is not bound by the Arbitration Agreement because she "made no express and unequivocal agreement to arbitrate and thereby waive important constitutional and statutory rights." (Opp'n, Dkt. No. 102 at 8.) She contends that any communications regarding the Arbitration Agreement were ambiguous at best because (1) language in the Arbitration Agreement contemplates a signature, (2) Ogletree's email

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-00060-JVS-ADS<br>2:19-cv-00527-JVS-ADS | Date | March 26, 2019 |
|---|---|---|---|
| Title | Dawn Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C., et al. | | |

communications to her contemplate a signed agreement, (3) Ogletree's internal email communications suggest that the Arbitration Agreement needed to be signed unless an employee chose to opt-out, (4) she never expressly assented to the agreement because an indication that she would return some signed document did not mean the document was the Arbitration Agreement, (5) she received no benefit by failing to act because she could remain employed regardless of whether she signed the Arbitration Agreement, and (6) a reasonable person could have believed that a signature was required in order to be bound by the terms of the Arbitration Agreement. Id. at 2–14. In addition, Knepper points out that "the transferor court was not faced with a motion to compel under Section 4" and thus "did not apply 'the procedures established by Section 4'" or employ the requisite Rule 56-like standard," and merely found that she was "at least facially covered by an agreement to arbitrate" when "deciding whether transfer of venue was appropriate. Id. at 15. Thus, Knepper asserts that the Court is not bound by Judge Orrick's opinion. Id.

Defendants instead argue that Judge Orrick correctly determined that there was an agreement to arbitrate. (Reply, Dkt. No. 103 at 8.) While Defendants acknowledge "that Ogletree hoped that each covered individual would acknowledge receipt of the [Arbitration] Agreement[] in order to eliminate possible disputes on that issue," they assert "that the signature did not manifest *assent*, but only *receipt* (something that is not at issue here)." Id. at 9 (emphasis in original).

The Court agrees with Judge Orrick's determination that an agreement to arbitrate was not only facially formed, but in fact formed by virtue of Knepper's failure to opt-out by March 1, 2016 despite several notices regarding her deadline to do so. Knepper was on notice that if she did not opt-out, she would be bound to arbitrate. Since she continued working at Ogletree after March 1, 2016 without opting out, she was bound by the terms of the Arbitration Agreement. Thus, the Court **grants** the motion to compel arbitration.

### C.     The Class Action Waiver Is Valid

The Arbitration Agreement clearly provides that the parties agree that "the arbitrator shall not have the authority to consolidate the claims of other Individuals into a single proceeding, to fashion a proceeding as a class, collective action, or representative action, or to award relief to a class or group of claimants." (Arbitration Agreement, Dkt. No. 28-1, Ex. A ¶ 6.) Whether the class-action waiver is enforceable is a gateway

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-00060-JVS-ADS<br>2:19-cv-00527-JVS-ADS | Date | March 26, 2019 |
|---|---|---|---|
| Title | Dawn Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C., et al. | | |

question for this Court to decide based on the delegation clause of the Arbitration Agreement.  Id.  The Supreme Court has stated: "In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings."  Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1619, 200 L. Ed. 2d 889 (2018).  Knepper does not dispute that if the Arbitration Agreement is valid, the class action waiver is enforceable.  (Reply, Dkt. No. 103 at 13.)  Because the terms of the Arbitration Agreement specify a clear class waiver, which Knepper does not dispute, Knepper must arbitrate her claims on an individual basis with the exception of the PAGA claim.

**D.      Motion for Leave to Amend**

In her Motion for Leave to Amend, Knepper seeks to add Warren, Ochoa, Voltmer, and Campanaro as plaintiffs, and claims for discrimination (on behalf of the proposed plaintiffs in the individual and representative capacities), breach of fiduciary duty (on behalf of Warren and a proposed equity shareholder subclass), and breach of contract and implied covenant of good faith and fair dealing (on behalf of Warren and a proposed equity shareholder subclass) against Defendants, as well as Ronald Chapman ("Chapman"), Joseph Clees ("Clees"), and Joseph Beachboard ("Beachboard").  (Mot., Docket No. 52-1 at 70–72.)

Defendants argue that the Court should deny without prejudice Knepper's motion for leave to amend because: "(i) Knepper's claims are subject to mandatory arbitration in the Central District, (ii) venue is not proper in California for the three Non-California proposed plaintiffs, and (iii) the claims of the former equity shareholder, Warren, are subject to binding arbitration."  (Reply, Dkt. No. 103 at 17.)  To the extent that Knepper seeks to add additional claims or defendants, Defendants contend that she should make the request to do so to the arbitrator.  Id. at 17–18.  See Green v. Zachry Indus., Inc., 36 F. Supp. 3d 669, 678–79 (W.D. Va. 2014) (denying motion for leave to amend when plaintiff's "proposed amended complaint includes factual allegations regarding two individuals who wish to be added as party plaintiffs, *but sets forth only the same . . . claims* that the court found to be subject to a valid and enforceable arbitration agreement") (emphasis added); Castle v. Wells Fargo Fin., Inc., No. C 06-4347 SI, 2007 WL 703609, at *3 (N.D. Cal. Mar. 5, 2007) (denying without prejudice plaintiffs' motions to amend the complaint and deferring ruling on defendant's motion to compel

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-00060-JVS-ADS<br>2:19-cv-00527-JVS-ADS | Date | March 26, 2019 |
|---|---|---|---|
| Title | Dawn Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C., et al. | | |

arbitration when *all* plaintiffs were potentially subject to arbitration agreements because "the better course is to first determine the enforceability of the arbitration agreements before addressing the scope and management of the remainder of this litigation") (emphasis added); Wen-Chouh Lin v. Brodhead, No. 1:09CV882, 2012 WL 4793710, at *7 (M.D.N.C. Oct. 9, 2012) (finding "the Court would lack jurisdiction to address Plaintiff's Motions to Amend" if an arbitration agreement existed because *all* claims would have been subject to the agreement to arbitrate) (emphasis added).

Knepper contends that her motion should be granted because at least three of the four named plaintiffs that she sought to add do not have arbitration agreements and have EPA claims that can proceed in court. (Opp'n, Docket No. 102 at 21.) She asserts that venue is proper in the Central District of California because "a substantial part of the events or omissions giving rise to the [collective action] claim" took place here, as proposed defendant Beachboard resides in and operates in the Central District. Id. at 23; 28 U.S.C. § 1391(b)(2). In addition, while acknowledging that there is no Ninth Circuit authority on point, Knepper argues that 29 U.S.C. § 216(b) provides that venue in an EPA action is proper in "any Federal or State court of competent jurisdiction." Id. at 23–24. Even if venue were improper, Knepper suggests that "an objection to venue is neither a sufficient nor a compelling argument against the permissive policy governing leave to amend." Id. at 22. Since the PAGA and EPA claims "share overlapping issues of fact and law—namely, whether Ogletree engaged in a pattern and practice of gender-based pay discrimination against female shareholders," Knepper indicates that the Court should retain jurisdiction over the EPA claims in the interest of efficiency and judicial economy. Id. at 18, 24.

The Court **grants in part** the motion for leave to amend to add Knepper's claim for breach of fiduciary duty–discrimination against Defendants and Chapman, Clees, and Beachboard, which will be compelled to arbitration. (SAC, Dkt. No. 52-1, Ex. A ¶¶ 389-94.) The Court **denies** the motion for leave to amend to add the additional proposed plaintiffs because the Court is capable of granting relief under PAGA regardless of whether the proposed plaintiffs are joined; thus, they are not necessary parties to the case. See Fed. R. Civ. P. 19.

**D.    Motion to Stay All Proceedings**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-00060-JVS-ADS<br>2:19-cv-00527-JVS-ADS | Date | March 26, 2019 |
|---|---|---|---|
| Title | Dawn Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C., et al. | | |

"Where plaintiffs assert both arbitrable and nonarbitrable claims, district courts have 'discretion whether to proceed with nonarbitrable claims before or after the arbitration and [have] . . . authority to stay proceedings in the interest of saving time and effort for itself and litigants.'" Armstrong v. Michaels Stores, Inc., No. 17-CV-06540-LHK, 2018 WL 6505997, at *14 (N.D. Cal. Dec. 11, 2018) (quoting Wilcox v. Ho-Wing Sit, 586 F. Supp. 561, 567 (N.D. Cal. 1984)). In determining whether to stay such cases, courts consider "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962).

Defendants urge the Court to stay all non-arbitrable claims pending completion of Knepper's individual arbitration. (Reply, Dkt. No. 103 at 13.) They assert that "district courts consistently stay PAGA claims where the underlying labor code claims will be arbitrated." Id.; see Alvarez v. AutoZone, Inc., No. EDCV1402471VAPSPX, 2015 WL 13427751, at *2 (C.D. Cal. July 8, 2015) ("[T]he Court finds that Plaintiff's PAGA claims should be stayed in the interest of economy of time and effort for the litigants and the Court. Staying Plaintiff's PAGA claims while his individual claims are arbitrated does not harm Plaintiff in his prosecution of his PAGA claims or create hardship, and simplifies issues, proof, and questions of law."); Jenkins v. Sterling Jewelers, Inc., No. 17CV1999-MMA (BGS), 2018 WL 922386, at *8 (S.D. Cal. Feb. 16, 2018) (citing Shepardson v. Adecco USA, Inc., 2016 WL 1322994, at *6 (N.D. Cal. Apr. 5, 2016) ("Plaintiff's PAGA claims are derivative in nature of her substantive claims that will proceed to arbitration, and the outcome of the nonarbitrable PAGA claims will depend upon the arbitrator's decision.").

Knepper instead argues that the Court should not stay the representative PAGA claim because it is non-arbitrable and a stay would "[d]elay[] necessary injunctive relief and other associated remedies against Ogletree's Firm-wide practices [that] would only harm the public." (Opp'n, Docket No. 102 at 18.) Knepper points to the model articulated in Teamsters, in which a "class trial to challenge the employer's policies and practices" is "followed by individual remedial proceedings." Id. at 16. See Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 324 (1977). Knepper contends that "[s]taying these claims in favor of individual arbitration would subordinate the interests of the State

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-00060-JVS-ADS<br>2:19-cv-00527-JVS-ADS | Date | March 26, 2019 |
|---|---|---|---|
| Title | Dawn Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C., et al. | | |

to Ogletree's desire to arbitrate against Knepper" such that the efficiency and fairness of the Teamsters method would be threatened. Id. at 16. The Supreme Court has described the Teamsters approach as follows:

> We have established a procedure for trying pattern-or-practice cases that gives effect to these statutory requirements. When the plaintiff seeks individual relief such as reinstatement or backpay after establishing a pattern or practice of discrimination, "a district court must usually conduct additional proceedings . . . to determine the scope of individual relief." At this phase, the burden of proof will shift to the company, but it will have the right to raise any individual affirmative defenses it may have, and to "demonstrate that the individual applicant was denied an employment opportunity for lawful reasons."

Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 366–67 (2011) (citing Teamsters, 431 U.S., at 361–62) (emphasis added). According to Knepper, "[r]eversing the Teamsters model by prioritizing individual arbitration would subvert the Teamsters regime and undo the presumption of discrimination that flows from a Phase I finding against the employer." (Opp'n, Docket No. 102 at 19.) Moreover, Knepper distinguishes the cases cited by Defendants, pointing out that in Jenkins, the PAGA claims depended on the arbitration results, and in Alvarez, the arbitration and PAGA action were with regard to the same "same set of issues, facts, and questions of law." Alvarez, No. EDCV1402471VAPSPX, 2015 WL 13427751, at *2; Jenkins, No. 17CV1999-MMA (BGS), 2018 WL 922386, at *8. Here, because the PAGA claims "center on a Firm-wide policy and practice of discrimination," Knepper contends that "[r]esolution of Plaintiff's individual claim will have minimal, if any, bearing on the representative PAGA claims." (Opp'n, Docket No. 102 at 20.) Since the PAGA claim could proceed regardless of the arbitration outcome, Knepper indicates that "there is no legitimate risk of prejudice or duplicative cost associated with proceeding on the PAGA claim." Id. at 18.

The Court agrees with Defendants that the PAGA claim should be stayed pending the outcome of arbitration. The model from Teamsters is inapplicable to this case. In light of the division between arbitrable individual claims and the non-arbitrable representative claim, this is not a situation in Knepper's individual claims depend on a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-00060-JVS-ADS<br>2:19-cv-00527-JVS-ADS | Date | March 26, 2019 |
|---|---|---|---|
| Title | Dawn Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C., et al. | | |

prior resolution of the PAGA claim, as contemplated by Teamsters.  In addition, the Court finds that "the orderly course of justice" that would result from a stay pending arbitration of issues that bear upon the PAGA claim outweighs "the possible damage which may result from the granting of a stay" because an arbitration finding on Knepper's individual claims could impact her ability to be a representative on the PAGA claim.  CMAX, 300 F.2d at 268; see Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 863 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.")  Thus, the Court **grants** the Motion to Stay All Proceedings.

## IV.  CONCLUSION

For the foregoing reasons, the Court **grants** the Motion to Compel Arbitration and Stay All Proceedings and **grants in part** the Motion for Leave to Amend as to the breach of fiduciary duty–discrimination claim as to all current and proposed defendants, but **denies in part without prejudice** the Motion for Leave to Amend to include additional plaintiffs.  Knepper will have forty-five (45) days to initiate individual arbitration of her non-PAGA claims.

**IT IS SO ORDERED.**

|  | : | 0 |
|---|---|---|
| **Initials of Preparer** | **lmb** | |